### PERKINS GLUE CO. v. GOULD MFG. CO. et al.

### SAME v. WISCONSIN CHAIR CO. et al.

(District Court, E. D. Wisconsin.  May 3, 1922.)

### Nos. 1117, 1118.

**Patents ⟨⟩328—Reissue 13,436, claims 28, 30, and 31, for glue from starch base, held limited to product of described process.**

The Perkins reissue patent, No. 13,436, claims 28, 30, and 31, for a glue made from a starch base having substantially the properties of animal glue, *held* limited by prior construction of other claims in the patent and by the patentee's disclaimer of claims for the glue base per se, and of the process of making glue, except where the starch is degenerated to the extent described in the reissue patent, to the glue made by the process described, and not to include all glue having properties of animal glue made from a starch base, so as not to be infringed by defendants' glue, which admittedly was made by a different process.

In Equity.  Separate suits for infringement of a patent by the Perkins Glue Company against the Gould Manufacturing Company and others and against the Wisconsin Chair Company and others.  Decrees directed, dismissing the bills.

Gorham Crosby, of New York City, and Lines, Spooner & Quarles, of Milwaukee, Wis., for plaintiff.

Pennie, Davis, Marvin & Edmonds, of New York City, James A. Watson, of Washington, D. C., and Quarles, Spence & Quarles of Milwaukee, Wis., for defendant.

GEIGER, District Judge.  These two cases rest upon the reissue patent to Perkins which was the subject of consideration in Perkins Glue Co. v. Solva Waterproof Co. (D. C.) reported in 223 Fed. 792 (D. C. N. D. Ill.) and Id. (C. C. A. 7th Cir.) 251 Fed. 64.  Claims Nos. 28, 30, and 31 are in issue:

"28. A glue comprising cassava carbohydrate rendered semifluid by digestion and having substantially the properties of animal glue."

"30. A wood and fiber glue formed of a starchy carbohydrate or its equivalent by union therewith of about three parts or less by weight of water and alkali metal hydroxid.

"31. A wood and fiber glue containing amylaceous material as a base dissolved without acid in about three parts of water or less, and being viscous, semifluid and unjellified."

It will be assumed that, nominally, at least, the above three claims were comprehended within the decree in the Solva Case as valid, and therein held infringed.  But the present case, in view of the determination by the Circuit Court of Appeals, presents sharply the question whether, in the light of the determination by said court upon other claims of the patent, these three claims can be or were intended to be held valid, without any limitation whatsoever.  The plaintiff contends that such claims were recognized as broadly valid, covering a new product, and therefore the product—i. e., "a glue comprising cassava carbohydrate rendered semifluid by digestion and having substantially the properties of animal glue"—cannot be made by any process without

---

leave or license of the plaintiff. The defendant contends that the determination by the Circuit Court of Appeals limited the validity of the three claims in question to a product made according to processes held valid by the Circuit Court of Appeals, but do not cover a product made according to other processes and particularly processes, claims for which were held invalid in the identical case determined by the Circuit Court of Appeals, or claims which plaintiff "disclaimed," as hereinafter noted.

In the Solva Case process claims were held valid, among them:

"19. In the process of making good glue, the combination of the following steps: Agitating a cassava carbohydrate with a digestive agent to decrease its water absorptive properties, without rendering the carbohydrate materially soluble in cold water, and then putting the product thus produced into a solution containing about three parts or less by weight of water to produce a glue for application.

"20. The process of making glue, which consists in agitating a starchy carbohydrate with water and a digesting agent to reduce the water absorptive properties of the carbohydrate without rendering it materially soluble in water, then mixing the carbohydrate with water and caustic alkali, the amount of water used being about three parts or less by weight of dry carbohydrate, the amount of caustic used being about ten per cent. or less by weight of dry carbohydrate to form the glue as distinguished from mucilages, sizes, and paste."

See, also, other two-step claims in patent.

Claims 10, 12, and 13 of the patent are pertinent to the questions now presented:

"10. The process of making glue which consists in dissolving cassava carbohydrate in caustic alkali until a glue is formed as distinguished from mucilages, sizes and pastes."

"12. The process of making a glue, which consists in mixing starch with water and caustic alkali to dissolve the carbohydrate, the amount of water used being about three parts or less by weight of dry carbohydrate so that a wood glue is formed as distinguished from mucilages, sizes and paste.

"13. The process of making a wood glue which consists in treating a suitable starchy product a material portion of which is substantially insoluble in water with a solvent of cellulose and about three parts or less by weight of water, to produce a glue having adhesive powers substantially as great as those of good animal glue."

The Circuit Court of Appeals dealt thus with the decree of the District Court:

"The decree of the District Court sustaining the claims for a glue base process and product and for the so-called 'second step' as such is reversed, and that part of it which upholds the claims of the patent for the final process and the resultant product respectively is affirmed. * * *"

When the case was remitted to the District Court for entry of a decree upon this mandate, the parties appeared to be at variance respecting the effect of the appellate ruling, and Judge Sanborn expressed himself in a memorandum:

"The opinion of the Circuit Court of Appeals is said by counsel for all parties to be perfectly clear, but they differ radically as to its meaning and submit totally different forms of decrees. The opinion of Judge Kohlsaat requires very careful study, as well as the patents, and even then the opinion is obscure and another appeal may be necessary to fully determine its meaning. To the best of my ability I will endeavor to state that meaning as I

understand it. The first process or step of the patent is for the purpose of creating a suitable starch paste and then applying to that base the second step in order to produce the final product or starch glue. These are the only steps or processes described and they may be taken singly or together. Both are old and unpatentable when taken separately, but when joined together to produce starch glue which has the properties described by Mr. Perkins and which is as good or better than animal glue, they are new and make patentable subject-matter both as a process and as producing a patentable product consisting of glue. * * * * From these quotations it seems probable that the appellate court intended to sustain only those claims of the patent which included only the two steps and only when their use results in the Perkins glue together with such additional claims which count on such glue as a product of the two steps and no others."

"The result of the foregoing is that the argument of counsel for defendants is adopted so far as construction of the decree is concerned, and that of plaintiff's counsel rejected."

This opinion was filed and the decree pursuant to the mandate entered on August 5, 1918. On February 6, 1919, the plaintiff herein, as assignee of the patentee, filed a disclaimer—undoubtedly obediently to its conception of the ruling of the appellate court and Judge Sanborn's interpretation thereof, as above noted—which disclaimer is abstracted thus:

"Enters its disclaimer of claims 1, 3, 4, 6, 7, 8, 16, 24, 25, 26, and 27 thereof (to wit, the claims for the glue base per se and for the process of making the glue base per se). And further it hereby disclaims, from claims 9, 10, 11, 12, 13, 14, and 38 of said reissued letters patent numbered 13,436, any process of making glue, excepting where the starch or starchy product of carbohydrate subjected to the process is degenerated to the extent described in said reissued letters patent No. 13,436, whereby the process results in the good as animal glue described in said reissued letters patent. * * * "

The plaintiff, upon the motion for rehearing in the appellate court, observed:

"As the opinion plainly indicates, the final glue product may be made by suitably creating a suitable base, whether previously degenerated by the alkali treatment, or by the acid treatment, or obtained by intermixture, or simply found in the market—provided only that the base is in the proper state or condition of degeneration when treated to make this final glue product."

Now the query at once arises, if the patent in suit, and particularly claims 28, 30 and 31, cover any good as animal glue made from starch, if processes cut no figure, if degeneration be of no consequence, except that it may be said that the final product contains starch, in some way, somehow, degenerated or converted, then why the necessity of holding any process claims invalid? If the claims here in suit are thus all-embracing, then why *disclaim from* any of the process claims? If, for example, the product of claim 28 may be made by the processes noted in claims 10, 12, or 13, then why disclaim from the latter "any process of making glue excepting where the starch or starchy product is degenerated to the extent described * * * *whereby* the process results," etc.. Surely the disclaimer indicates that if glue, made according to the processes broadly described in claims 10, 12, and 13, resulting in making the product noted in claim 28, then Perkins will not claim it unless the starch *subjected to the process* is degenerated to the extent described. And if, as must be conceded, all starches, whether used in

glue, sizes, or pastes, undergo degeneration or conversion, and if, as claimed on rehearing, the degeneration may take place or may be obtained by "intermixture" with other ingredients, then, again, why the necessity of claims 10, 12, or 13, why the necessity of the more specific two-step claims, and why the necessity of any disclaimer out of claims 10, 12, and 13?

Surely these disclaimers proceed upon the hypothesis that glue may be made, as in such disclaimed claims directed, even if the starch is not degenerated *as specified in the patent*; and it will not do to argue that, merely because a glue so made turns out to be good as animal glue, therefore the *precise degeneration reserved* by the disclaimer *must be assumed* to have entered into the process *in the manner specified,* and therefore into the product. If the result in the Solva Case is not as Judge Sanborn states it; if, notwithstanding the language of the court, any starch glue, good as animal glue, is within the Perkins monopoly— then the entire patent, as Judge Sanborn considered and upheld it, is now *re*claimed, not only from the decree of the appellate court, but also from the plaintiff's express disclaimer. True, in considering two-step processes, it is entirely proper to assert that an alleged infringer equivalently followed one or the other step. But after the Circuit Court of Appeals expressly held that each step per se was old, that their combination exhibited the patentable novelty, it was no longer possible for Perkins to claim that *each step equivalently comprehended* the other. And when, therefore, the plaintiff in this case conceded, at the opening, that the defendant's base was not within the reservation of the disclaimer, it conceded—in connection with the clear proof in the case—that the defendants in making their glue were in the disclaimed field. It would be simply paradoxical to allow that, after exempting to the public the right thus to process (see, for example, claim 10), every resultant product was still within the protection of claim 28.

It is my judgment that the result in the appellate court, when considered with the subsequent disclaimer, gives to patents such as Gerard (Belgian patent No. 34,869) and Dornemann (French, No. 232,781), a significance which was necessarily denied them when Judge Sanborn in the Solva Case accorded broad validity to practically the whole of the Perkins patent. The proofs in the case respecting practice of the processes of each of those two patents seem to me a perfect demonstration that the plaintiff's disclaimer of claims 10, 12 and 13 was in effect a disclaimer of Gerard and Dornemann, and it would be absurd upon the proofs now here to say that the processes and product practiced and produced by defendants' witnesses were permissible if the product be called "sizing" or "paste," but not permissible, if upon practice of the process—the disclaimed process—good veneering glue resulted.

Plaintiff's witness, Grosvenor, admitted, though somewhat reluctantly, that, though his experimental use of Gerard or Dornemann gave an unsatisfactory product, he would not deny that, had he practiced such processes by using defendant's base, he would have had defendant's glue as a resultant. On the other hand, the defendants' witnesses leave no doubt upon the matter, unless such doubt is arbitrarily inject-

ed by *assuming* that every base is, or sooner or later will be, degenerated *as specified* by Perkins. But, as noted, this assumption should have resulted unhesitatingly in an affirmance of the decree in the Solva Case and a validating of the Perkins patent in its entirety, and, of course, dispense with the necessity of any disclaimer.

It is my judgment that, upon the issue as defendants clearly tender it, the Perkins patent—in view of the result in the Solva Case and the plaintiff's disclaimer—must now be regarded as embodying processes and product clearly apprehendable by workers in the art, and apparently the Circuit Court of Appeals aimed to point out an invention thus apprehendable. Else it would not have been necessary to observe that "there seems to have been great difficulty in getting at the correct *formula*: that Perkins labored years to get the latter *just right*"; that, quoting from the witness Carmichael, "he [Perkins] proportioned the *various steps* to one another according to the selection of raw material, in the conversion of the raw material, and in the solution of the material, being particular about the various substeps by which, in the main step effecting the solution, he obtained a uniform and homogeneous product."

Therefore it is not possible, after crediting Perkins with discovering a correct formula, one that is "just right," to assume that every formula which he discarded, and that every product made by a discarded formula, is none the less within his monopoly, nor to extend the latter over products resultant upon the practice of Gerard or Dornemann, even though the latter failed or were not interested in apprehending the efficacy of their processes to produce a veneering glue satisfactory to others than to Perkins.

Further, Perkins' monopoly cannot be left within vague, undetermined or undeterminable boundaries by the mere suggestion that "by proper adjustment of conditions" raw starches "may be used without the first-step treatment." Such "proper adjustment" must in any event appear as clear legal equivalency, and, as noted, the proof of such equivalency is not adduced by mere statement that an alleged infringer is making good veneering glue out of starch, wherefore he must have availed himself of Perkins' discovery.

I am well satisfied to interpret the result in the Solva Case as did Judge Sanborn. Indeed, his estimate, when considered in the light of his exhaustive research at the original trial, is most persuasive; and upon such view the proofs in this case clearly absolve the defendants from any charge of infringement.

A decree dismissing the bills may be entered accordingly.