### PERKINS GLUE CO. v. STANDARD FURNITURE CO.*

(Circuit Court of Appeals, Second Circuit. January 8, 1923.)

#### No. 107.

Patents ⊂⊃328—Reissue 13,436, claims 13, 28, 30, 31, and 38, for glue and method of making it, held not infringed.

 The Perkins reissue patent, No. 13,436, claims 13, 28, 30, 31, and 38, for glue and method of making it, which had been previously construed by a decision in which the patentee apparently acquiesced, as a combination of two steps, each of which was old in the art, *held* not infringed by defendant's glue and process, in which the product of the first step in the patented method was obtained in nature and thereafter subjected to the second step.

Appeal from the District Court of the United States for the Northern District of New York.

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Certiorari denied 43 Sup. Ct. ——, 67 L. Ed. ——.

Suit in equity by the Perkins Glue Company against the Standard Furniture Company for infringement of a patent. Decree for plaintiff (279 Fed. 458), and defendant appeals. Reversed and remanded, with directions to dismiss the bill.

Pennie, Davis, Marvin & Edmonds, of New York City (William H. Davis, of New York City, and James A. Watson, of Washington, D. C., of counsel), for appellant.

William Houston Kenyon, Gorham Crosby, and Ward, Crosby & Smith, all of New York City, for appellee.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge. The history of litigation over this patent is so long and so fully reported that we shall for the most part express our opinion about the facts at bar by reference to other decisions. The patent is the Perkins reissue No. 13,436 (original No. 1,020,655, dated March 19, 1912; reissue dated July 2, 1912).

The validity and scope of the patent were elaborately considered by the appellate court in the Seventh Circuit in Solva, etc., Co. v. Perkins, etc., Co., 251 Fed. 64, 163 C. C. A. 314, modifying (D. C.) 223 Fed. 792. Claims 13, 28, 30, 31, and 38 were there in issue and are also the subject of litigation here. The subject-matter of the patent is described by its title, viz. "glue and method of making the same," and the language of the claims is sufficiently set forth in the opinion of Cooper, J., below in the present litigation. Perkins, etc., Co. v. Standard, etc., Co., 279 Fed. 458.

The patent has also been considered in one of the Michigan districts. Perkins, etc., Co. v. Hood, 279 Fed. 454; Same v. Holland, etc., Co., 279 Fed. 457. Since opinion was filed below the patent has been carefully gone over in Perkins, etc., Co. v. Gould, etc., Co., 280 Fed. 728, by Geiger, J.

This record contains no evidence offered by plaintiff casting any new light on Perkins' disclosure; that is we find in plaintiff's present evidence material explaining what all the courts have said and what they have differed about, and nothing else. The owners of the patent cannot in our opinion complain of the result reached by the Circuit Court of Appeals in the Solva Case, supra, namely, that the process disclosed by Perkins consisted of two parts or steps, and that each of the steps considered by itself was old, but the product was new and patentable. Nor can plaintiff complain if, without expressing agreement or disagreement with this result, we accept it for purposes of present decision.

Sanborn, District Judge, upon receipt of the mandate in the Solva Case, ruled that only those claims remained valid after the decision of the higher court "which included the two steps (of the process) and only when their use results in Perkins' glue, together with such additional claims as count on such glue as a product of the two steps and no others." We are not advised that any appeal was ever taken from this interpretation of the ruling of the Circuit Court of Appeals. Subsequent to such ruling, however, this plaintiff disclaimed, inter alia,

from claims 13 and 38 of the reissue, "any process of making glue excepting where the starch or starchy product of carbohydrate subjected to the process is degenerated to the extent described in" the reissue. For this procedure, see 280 Fed. 729, 730.

The infringement here claimed is that defendant procures starch so degenerated somehow or anyhow (plaintiff cares not) as to be in a condition equivalent to starch treated by Perkins' first process, and then gives to that substance Perkins' second process, and so obtains Perkins' product. "Degeneration," as used throughout this evidence, means, according to plaintiff's expert witness, "a certain proportioning of resulting viscosity, cohesiveness, and adhesiveness." As matter of fact there is no denial of defendant's evidence that the starchy substance or carbohydrate (called viscamite), which it uses as the base for its alleged infringing glue, is a natural product; it has received no chemical treatment whatever. The fact is that the earth has been found to produce a starch which plaintiff says is the exact equivalent of what Perkins made by his first process.

This product of nature cannot per se be covered by any patent, and it certainly is not the result of any process devised by Perkins. Therefore, if we accept the decision in the Solva Case as interpreted by Sanborn, J., and apparently acquiesced in by plaintiff, there can be no infringement, because this defendant is not using a glue which is the result of both steps of Perkins' patent.

But we go further, and examine with particularity the method or process used by defendant in making its glue. Fortunately what the defendant did was so plain that it is covered by a stipulation inter partes, the substance of which is that, starting with the natural starch base, a mixture is made ultimately containing "about 2⅓ parts of water to one part of starch base by weight and about 3 per cent. of caustic soda based on the weight of the starch." Let it be assumed that this is the equivalent of Perkins' product, yet it remains true (1) that the process per se has been held old, and (2) that in our opinion it is substantially disclosed in the Dornemann French patent of December 11, 1893, and described with reasonable accuracy in Belgian patent to Gerard of June 19, 1874.

In our opinion this record shows that some accident of nature, or the skill of agriculturists, has produced and put on the market a cassava starch of that degree of viscosity, etc., which Perkins achieved by his degenerative process. With such a starch, defendant, by using methods as old as Gerard, has produced a substance which plaintiff says is Perkins' glue. Perhaps it is in result; but it cannot be the same thing in a patentable sense, because nature has supplied the base and Gerard the process. The only reason that ever justified any court in holding Perkins' product patentably new was by finding it the peculiar result of a combination of two processes severally old. No such foundation for a finding exists in this case.

We have not attempted to harmonize or explain all the previous decisions; it is enough to point out that, if the only appellate decision be accepted as finally interpreted, there is no infringement, and if the facts in this case alone be regarded, nature or the farmer has (so to

speak) superseded the first half of Perkins' method, and, as the second half was not new, the product of a natural base treated by an old process cannot be an infringement under any view of the law.

Plaintiff has defined its product as a "new vegetable glue, as good as animal glue for veneering." We think that this definition is not advanced by embodying in it a laudatory phrase descriptive of intended result. We may agree that Perkins disclosed a "new vegetable glue"; i. e., a manufactured product. There are some manufactured products so broadly new that the same thing, however produced, may be within the invention's broad range of equivalents. This is a question of fact; but, on the prior art and the evidence herein as to modern cassava starch, Perkins' vegetable glue is not such a product.

We think, therefore, that the lower court fell into error in substantially paying no attention to the nature of defendant's starch base, and it is directed that the decree be reversed, and the cause remanded, with directions to dismiss the bill, with costs in both courts, on the ground of noninfringement,