## PERKINS GLUE CO. v. HOOD et al.
## SAME v. WEST MICHIGAN FURNITURE CO. et al.

(District Court, W. D. Michigan, S. D. September 10, 1920.)

Patents ⬤⇒328—Reissue 13,436, for a wood glue and process of manufacture, held valid and infringed.

The Perkins reissue patent, No. 13,436, for a wood glue and process of making same, claims 13 and 38, for the second and final step in the process, as limited by the disclaimer filed, and claims 28, 30, and 31, for the product, *held* valid and infringed, though in preparing the starch base, treated by the final process, the first step in the patented process, covered by other claims, is not used, but an equivalent base otherwise procured is used, and the product resulting from its treatment by the final process is that of the patent.

In Equity. Suits by the Perkins Glue Company against Fred E. Hood and others, doing business under the firm name of Hood & Wright, and against the West Michigan Furniture Company and George P. Hummer. Decrees for complainant.

Knappen, Uhl & Bryant, of Grand Rapids, Mich., and Wm. Houston Kenyon and Gorham Crosby, both of New York City, for plaintiff.

Travis, Merrick, Warner & Johnson, of Grand Rapids, Mich., and Rector, Hibben, Davis & Macauley, of Chicago, Ill., for defendants.

SESSIONS, District Judge. These suits have been tried together upon one record, and are for infringement of two process claims (13 and 38) and three product claims (28, 30 and 31) of United States

reissue letters patent No. 13,436, issued to plaintiff as assignee of Frank G. Perkins, now deceased. The subject-matter of the patent and claims here in issue is a vegetable glue derived from starch or starchy products, having the adhesive strength and qualities of animal glue and suitable for gluing woods, especially veneers, and also the method or process of making such glue. The conclusions reached may be thus summarized:

1. The questions here presented for determination and the evidence relating to the history of the patent; the development, completion, and description of the invention covered thereby; the value, utility, demand for, and commercial success of the patented product; the interpretation of the specification and claims of the patent; prior use; the prior art, and other matters affecting the scope and validity of the patent— are substantially identical with the issues and evidence in the case of Perkins Glue Co. v. Solva Waterproof Glue Co. (D. C.) 223 Fed. 792, and (C. C. A. 7) 251 Fed. 64. Hence neither a lengthy statement of facts nor an extended discussion of the issues is necessary. In the present case, however, each of the defendants is a manufacturer of furniture and uses the glue in question mainly for making veneers. Each purchases the prepared glue base from the National Process Company or the International Process Company of Indianapolis, subjects the glue base so purchased to the treatment of the final process described in the patent, and thus produces the glue of the patent ready for application and use. The glue base manufactured and sold by the National and International Process Companies and used by defendants is not prepared in accordance with the method or first step of the process of the patent but is produced by mixing commercial starches of different grades and kinds, the raw, underdegenerated, and overdegenerated starches being so proportioned that the mixture has the same average degeneration and the same water absorptive properties as the processed glue base of the patent.

2. While the decision of the Circuit Court of Appeals in the Solva Case above cited is not controlling, it is strongly persuasive and, when correctly interpreted, should be followed, unless impelling reasons for a different conclusion are made to appear. No such reasons have been advanced or suggested.

3. Such doubt and uncertainty as exist, as well as the present controversy itself, have arisen, for the most part, from the unfortunately ambiguous language of the decision of the Circuit Court of Appeals in the Solva Case and the interpretation thereof by the lower court in the execution of its mandate. The District Judge felt compelled to find, contrary to his own judgment, that probably:

"The Appellate Court intended to sustain only those claims of the patent which include only the two steps, and only when their use results in the Perkins glue, together with those additional claims which count on such glue as a product of the two steps, and no others."

Under this finding, the product claims, 28, 30, and 31, of the patent here in suit, were held to be valid, and the process claims, 13 and 38, to be invalid. A careful study of the opinion of the Circuit Court of Appeals, as well as the record in the Solva Case and a painstaking review of the evidence in the present suits lead me to a different conclu-

sion with regard to the process claims. The claims of the patent for the glue base as well as the process of preparing it are concededly invalid and are not here involved. It is equally clear that the claims for the finished product and for the complete process of preparing such product, including the two steps thereof in combination or succession, are valid. It is also certain that the claims for the glue resulting from the application of the final process to the glue base of the patent are valid, notwithstanding the fact that neither the glue base itself nor the process of making it is patentable.

In his specification, the patentee points out, or at least suggests, that his glue base may be produced without using his preferred process. It must follow that the claims for the inventor's final process, applied to or in combination with the glue base of the patent, in whatever manner such base may have been produced, are valid. That the Court of Appeals intended so to hold seems reasonably probable:

(1) A contrary holding would be both illogical and at variance with established rules of law. Ordinarily, a patentable product does not result from the practice of an old, well-known, and nonpatentable process.

(2) Defendants in the Solva Case applied for a rehearing for the sole purpose of having the opinion of the court clarified and made more specific and definite, because of widely circulated statements made by plaintiff to the trade which were asserted by defendants to be contrary to the holding of the court as expressed in its opinion. The claims and contentions of plaintiff were fully presented both in its circular to its customers, submitted to the court by defendants, and in its answer to the petition for rehearing. If its claims were in direct conflict with the intended rulings of the court, as counsel for defendants then insisted and now insist, it is a fair inference that the court would have promptly required their correction and thus have terminated a prolonged litigation and prevented future controversy.

(3) Neither the opinion nor the decree and mandate of the Circuit Court of Appeals requires a finding of invalidity of process claims 13 and 38 of the patent. The language of both the opinion and mandate is:

"That part of it [the decree of the District Court] which upholds the claims of the patents for the final process and the resultant product respectively is affirmed."

Clearly "final" process does not necessarily or presumably mean "complete" process. These claims are not strictly for the second step of the process alone and as such, but are for the final process, applied to or in combination with the glue base of the patent. Such a construction avoids inconsistency and satisfies the mandate of the court in both letter and spirit.

4. Of course the plaintiff is bound by its disclaimer, but the limitation thereby imposed does not extend beyond the plain meaning of the language employed and the purpose sought to be accomplished. The sole object of the disclaimer was to narrow the claims with respect to the starchy product or glue base to be subjected to the final process of the patent. Under the disclaimer the starch or starchy product to be processed must be degenerated to the extent described in the patent

before being subjected to the final process of the patent. So limited, the claims are valid and infringed.

A decree will be entered in each of these cases finding each of the claims declared upon valid and infringed, granting an injunction, directing an accounting, and referring the case to John S. Lawrence, master in chancery, for such accounting. Plaintiff will recover its costs of suit, to be taxed.