**DAVIS et al. v. ISHAM et al.**
Patent Appeal No. 3328.

Court of Customs and Patent Appeals.
June 12, 1934.

Charles M. Thomas, of Washington, D. C., Frederick S. Lyon, of Los Angeles. Cal., and Francis D. Thomas, of Washington, D. C. (Lyon & Lyon, of Los Angeles, Cal., of counsel), for appellants.

Edmund G. Borden, of New York City (J. Austin Stone, of Washington, D. C., of counsel), for appellees.

Before GRAHAM, Presiding Judge, and BLAND, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

This is a proceeding in which appeal has been taken from the decision of the Board of Appeals of the United States Patent Office, affirming the decision of the Examiner of Interferences, awarding priority of invention to appellees upon three counts (being all the counts) of an interference.

The interference involves patent No. 1,-705,809, issued to appellants March 19, 1929, on an application filed June 2, 1928 (the same being a renewal of one filed October 15, 1924), entitled "Process of Removing Sulphur Compounds from Petroleum Oils," and an application (serial No. 671,645) filed by appellees October 30, 1923, entitled "For Improvements in Gasoline Manufacture with By-product Recovery."

Count 1, which is regarded as typical, reads as follows:

"1. In a process of treating cracked petroleum naptha and similar high sulphur petroleum distillates with sulphuric acid to remove sulphur bodies, substantially reducing the polymerization of the unsulphured bodies by treating the oil at below 38° F. with an acid of lower freezing point than the reaction temperature." .

The counts, which appeared as claims 3, 4, and 5 in the patent of appellants, were copied by appellees December 8, 1930, upon the suggestion of the Primary Examiner, for the purpose of interference, and the interference was declared February 14, 1931.

Appellees filed preliminary statement April 23, 1931, alleging conception, disclosure to others, written description, and the making of apparatus drawings and reduction to practice, all in the month of July, 1923.

The preliminary statement of appellants, filed April 27, 1931, alleged conception, explanation to others, written description, and reduction to practice, all on or about June 14, 1923; the making of apparatus drawings on or about August 6, 1924; embodiment of the invention "in a semi-commercial scale plant" in August, 1925, and utilization "since about September 21, 1927," in a "ten thousand barrel per day capacity commercial plant."

On August 10, 1931, a disclaimer, dated August 8, 1931, was filed in the Patent Office by Standard Oil Company of California, the assignee of appellants. This disclaimer was published in the Official Gazette of September 1, 1931, and recites that assignee "hereby does disclaim from the scope of claims 1, 2, 3, 4, and 5 of said Letters Patent any and all processes of treating petroleum oils, except processes of treating petroleum oils in which the major part of the unsaturated constituents of the petroleum oils is retained in the treated oil."

On August 8, 1931, appellants filed motion to dissolve the interference, reciting therein the filing of the disclaimer above quoted, and stating the grounds relied upon for dissolution. This motion was supplemented by another filed September 15, 1931.

The decision of the Examiner of Interferences, denying the motion to dissolve, was rendered December 30, 1931, and times set for the taking of testimony. On April 25, 1932, Davis et al., having failed to take testimony within the time fixed, judgment on the record was rendered in favor of Isham et al., the senior parties, which judgment was affirmed by the Board of Appeals in the decision now before us for review.

An analysis of the counts at issue, considered alone from their text, leads to the conclusion that there are two general but interrelated objectives of the process, viz., (1) the removal of sulphur bodies from cracked petroleum naptha and similar high sulphur petroleum distillates; and (2) a substantial reduction of the polymerization of the bodies so unsulphurized, the latter apparently being, so far as the counts extend, the ultimate end desired. To accomplish these purposes, both of which are integral parts of the general end sought, sulphuric acid is used in the manner described in the counts.

There is no recital of function in the counts and no statement as to the eventual

use or uses of the products produced by the process.

To obtain an idea respecting this, we must look beyond the counts to the respective specifications of the patent and application at issue. When these are so looked to, it appears that, in a broad sense, the parties had different objectives—that is, they expected generally to use the products respectively produced by them for different purposes.

Appellees seek a product for use in the production of industrial alcohols, while appellants wish to obtain a gasoline of high nondetonating value for use in internal combustion engines. It is explained that in gasoline there are certain hydrocarbon bodies called olefines.

Appellees' eventual objective being the production of alkyl sulphates (to be "afterward hydrolized to produce alcohols"), they introduce "Cold concentrated sulphuric acid," which, as it passes downward through a pipe of the apparatus used by them, "reacts with olefines to form acid alkyl sulphates." Apparently the resultant refined gasoline product (which is not a primary objective of appellees) is one which is largely denuded of the unsaturated hydrocarbons, or olefines.

To the product which appellants sought to obtain, however, these unsaturated hydrocarbons or olefines are highly essential and it is desired to retain them.

The broad *objectives* sought by the respective parties appear, therefore, to be different, although the *processes* are broadly the same.

Success in obtaining the respective objectives depends, it appears, wholly upon the *quantity* of sulphuric acid used; appellees utilizing a much greater quantity than is utilized by appellants. The counts, however, teach nothing definite as to quantity, but it is argued by appellants that this is a matter obvious to those skilled in the art.

In this connection it is deemed proper to direct attention to the fact that, while appellees in their specification emphasize the object of producing acid alkyl sulphates, it is also said:

"Other objects and advantages of our invention will appear to those skilled in the art from the following description taken with the accompanying drawing. * * *"

The assignee of appellants, evidently realizing that the disclosure of appellees support the counts, as broadly drawn, and allowed in the patent, and probably realizing

appellees' priority, entered the disclaimer quoted, supra, and it is insisted that, construing the disclaimer as part of appellants' claims (now the counts), they become so limited in their scope as to avoid appellees' disclosure.

The tribunals of the Patent Office concurred in holding that, as expressed by the Board of Appeals, "If the disclaimer should be interpreted to so limit the process that in carrying it out the unsaturated constituents would be retained in the finished gasoline, such claims would not, we consider, read on the disclosure of Isham et al.," but they also concurred in holding, to quote the Board again, that " * * * the disclaimer can not be construed as limiting the scope of the claims of the patent."

As we view it, the controversy must be determined, so far as this court is concerned, solely upon this issue. Other issues are raised by appellants. One of these calls in question the sufficiency of appellees' disclosure to support the counts, even independent of the disclaimer; another suggests that the counts are ambiguous and uncertain and broader than the invention of either of the parties; and a third relates to the question of patentability over the prior art. The decision of the Board of Appeals upon these three latter issues we regard as correct, and they will not be further discussed.

The pertinent portion of the opinion of the Board of Appeals, relating to the issue raised by the disclaimer, reads:

"After a careful consideration of the claims and the disclaimer as well as the contentions of the parties, we feel that the disclaimer can not be construed as limiting the scope of the claims of the patent. While the disclaimer states that the major part of the unsaturated constituents is retained the disclaimer does not indicate any change in the steps of the process, the materials employed or the temperatures at which the treatment is carried out. If, as urged by Davis et al. they in carrying out the process defined by the claims retain the major part of the unsaturated constituents, while Isham et al. in carrying out the process convert the unsaturated constituents into alkyl sulphates, this difference in results must be due to some such factor as, for example, particular proportions of sulphuric acid. Even if, as contended to Davis et al., the required proportions could be readily determined by a chemist, there is nothing in the disclaimer to indicate that the proportions are material. The mere statement that in the resulting products

the unsaturated constituents are retained does not, we consider, in any way limit the process, and we must agree with the examiner of interferences that the disclaimer is ineffectual to limit the claims."

Before this court the pertinent arguments on behalf of appellants are, in effect, first, that the processes of the respective parties are diametrically opposite; and, second, that the disclaimer is not functional, or, if thought to be functional in form, it still has a meaning as part of the claims (now the counts) which limits them.

As we have heretofore indicated, the first argument is not well taken. The *processes* are broadly the same; only the *broader objectives* differ. This is certainly true when the counts are considered independent of the disclaimer, and we think it remains true even if the disclaimer may properly be taken as a part of the counts.

The language quoted, supra, from appellees' specification relating to "other objects and advantages" which may be obtained from their process is itself very broad, and the subsequent recital of the details of the process do not, in our opinion, necessarily limit appellees to a treatment whereby the "major part of the unsaturated constituents of the petroleum oils" *must* be separated from the treated oil. They may leave the major part in, if desired, because the extent of the separation, as has been said, depends upon the quantity of acid used, and this, according to appellants' own argument, is determined by those skilled in the art; the quantity used being selected with reference to the product desired.

As to the second argument, respecting the functional character of the disclaimer, it seems obvious to us that it is clearly functional and only functional. No step is disclaimed; one result out of several possible results of the process is stated, and even this one result is not definite.

It remains only to be considered whether, treating it as purely functional, the disclaimer may be held to place a limitation in the counts which renders proper an interpretation of them that eliminates appellees.

Upon this phase of the issue counsel for appellants have cited numerous authorities. We shall not review them here. We deem it sufficient to say that it is not thought that under the proper construction of the disclaimer it states the function in language which brings it within the doctrine of the cases relied upon or within that stated by Walker on Patents (6th Ed.) § 229, from which counsel quote the following: .

"Claims which are functional in form; that is to say, claims which literally purport to cover a result rather than a process or a thing, are properly construed to cover only the process or the thing which produces that result, for otherwise such claims would be void."

The difficulty in applying this statement to the disclaimer of appellants is that the disclaimer is itself so broad and indefinite as that we are unable to say that the degree of its limitation eliminates appellees.

The case of Holland Furniture Company v. Perkins Glue Company, 277 U. S. 245, 48 S. Ct. 474, 479, 72 L. Ed. 868, is cited as "the leading decision of the Supreme Court" having a bearing upon the question. From our examination of the case, we cannot agree that it is in point here.

Three product claims of "A Patent for Starch Glue and a Method of Making It," issued to one Perkins, were there involved in an infringement suit. One of these claims (No. 28) defined the glue as "having substantially the properties of animal glue." Others (Nos. 30 and 31) gave specific descriptions of the ingredients with the proportions of water to be used.

The court looked to claims 30 and 31 in construing claim 28, but in the end held claim 28 invalid, saying that "One attempting to use or avoid the use of Perkins' discovery as so claimed and described functionally could do so only after elaborate experimentation."

The opinion discloses that in the progress of that case there had been disclaimers with respect to certain process claims, but the process claims were not involved before the Supreme Court, and what was said of them in the opinion is not helpful here. It is not known just what the original process claims contained, and hence we are unable to interpret the real meaning of the disclaimers there made. It seems, however, that they were disclaimers of *steps*, or at least parts of *steps*. Here we have only the disclaimer of a function.

It is our opinion that the Board of Appeals reached the correct result in the case, and its decision is affirmed.

Affirmed.

HATFIELD, Associate Judge, **did not participate.**