## GENERAL MOTORS CORPORATION et al. v. APOLLO MAGNETO CORPORATION et al. *

## SAFETY STEERING CONTROL CORPORATION v. SAME.

### Nos. 181, 182.

Circuit Court of Appeals, Second Circuit.

Jan. 9, 1939.

L. HAND, Circuit Judge, dissenting in part.

———◆———

William F. Nickel, of New York City (Theodore S. Kenyon and William F.

Nickel, both of New York City, of counsel), for appellant.

Dean, Fairbank, Hirsch & Foster, of New York City (Morris Hirsch and Charles Silver, both of New York City, of counsel), for appellees.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge.

These suits for patent infringement were tried together below and heard in this court on one record. They will be considered in one opinion.

The decree in the first case adjudged Claims 1, 2 and 3 of the Stranahan patent No. 1,713,242 valid and infringed. The decree in the second cause adjudged all the claims of the Seth patent No. 1,846,694 valid and claims 1, 2, 3 and 6 infringed. In the first, appellee General Motors Corporation is the owner of the legal title and Stephen Seth is the exclusive licensee of the Stranahan patent. In the second, appellee Safety Steering Control Corporation owns the patent and appellant manufactured and sold the anti-shimmy devices complained of as an infringement.

The Stranahan patent, for a Steering Gear Check, was applied for March 19, 1926 and issued May 14, 1929. It discloses a gripping device clamped at one end to the front axle and provided at the other end with a brake shoe partially encircling and gripping the tie rod. The brake shoe bears frictionally against the tie rod and resists longitudinal movement so as to prevent shimmy. "Shimmy" means wobbling of the front wheels by an automobile due to various causes. The Seth patent, applied for January, 1932, and issued February, 1932, is for the same structure as the Stranahan patent except that the brake shoe is swivelled or pivoted on an adjustable arm to equalize wear. On December 7, 1928, before the issuance of the patents, appellant arranged with Seth to manufacture his device upon a royalty basis. Because the sales were unsuccessful, after a large expenditure for advertising, the contract was cancelled in 1930 and a release given to appellant of its obligations in April, 1931. April 24, 1933, a license under the Stranahan patent, was granted by General Motors to Seth.

The Stranahan patent is adapted to be mounted upon the usual axle construction of an automobile. The inventor says: "At the center of the front axle is mounted a

bracket (10) carrying an adjustable clamp (11), which comprises an outer bar adjustably engaging the said bracket (10) * * * and terminating in a curved end portion (12), the said end portion being adapted to receive the rear side of the drag link (7). A piece of brake lining (13) is interposed between the two parts and an adjustable clamp (11) is adjusted so that it exerts a slight tension or grip on the drag link (7) when the wheels are disposed in ahead position." The object of the device is the elimination of undesirable vibration, shaking or swerving of the front wheels which is not uncommonly present when the steering gear becomes somewhat worn or the structure of the automobile is improperly balanced from overloading or otherwise.

The operation of the device is stated as follows: "* * * it will be obvious that by having a means to resist the movement of the drag link (7) any external tendency of the wheels to oscillate about the axis of the steering knuckles will be greatly diminished, if not totally checked. The engagement of the curved portion (12) with the said drag link (7), is not of such nature, however, as to render steering difficult by the operator; in fact the device functions to aid the operator in steering in as much as the drag link (7) is maintained in fixed position when the wheels are in ahead position, the friction pressure thus serving not only to obviate the undesirable lateral oscillation and shaking of the wheels with the consequent wear and tear of the tires, but also to facilitate accurate steering by the operator."

Claim 1 provides for a (1) steering gear appliance comprised of an element adapted for attachment to a vehicle axle, (2) an elongated, horizontally disposed member adjustably connected to the said element, (3) and carrying a plate which is disposed substantially perpendicularly to the ground and (4) is adapted to contact the tie rod which forms a part of the steering gear. Claim 2 has, in addition to the foregoing elements, "a friction facing for the said last named plate". Claim 3 provides: "In a steering gear appliance and in combination with a tie rod extending along the front axle, and which rod forms part of the steering gear of a vehicle; an element carried by said axle and extending into the vicinity of said tie rod; and means carried by said element for frictionally engaging said rod when the wheels are in a position for straight ahead movement of the vehicle, and for releasing said rod when the wheels are turned from their position for straight ahead movement of the vehicle."

The patents of the prior art (Shoemaker, No. 1,435,423; MacDonald, No. 1,328,681; Wattles, No. 959,978; Lowe, No. 1,146,631) left little for inventive thought upon this accomplishment of avoiding shimmying of the wheels of an automobile. Shoemaker has a bracket clamped to the axle, corresponding to Stranahan's; a horizontal arm adjustably connected to the bracket by a bolt and spring. It carries at its outer end a cylindrical plate or roller which is perpendicular to the ground and contacts the tie rod through a member. It is more elaborate in construction but involves the same elements combined in the same way to achieve the same result. The MacDonald patent disclosed an automobile steering attachment designed to relieve both the car and the driver of road shocks usually transmitted through the steering wheel. The device comprises an element adapted for attachment to the axle, a bracket corresponding to Stranahan's clamping member; an elongated horizontally disposed member adjustably connected to this element—the horizontal arm pivotally adjustable on a bracket corresponding to Stranahan's adjustable arm member, and "carrying a plate which is disposed substantially perpendicularly to the ground" and "is adapted to contact the tie rod which forms a part of the steering gear". The plates in the MacDonald structure contact the tie rod through a bolt rigidly clamped to the tie rod. The Wattles patent has a member clamped to the axle in horizontal position; it carries a cylindrical plate or roller at its outer end, corresponding to the Stranahan semi-cylindrical plate. The plate is disposed substantially perpendicularly to the ground and is adapted to contact the tie rod through an attachment. The object of Wattles' invention was to reduce the vibration of the front wheels on the steering wheel. It did not have the adjustability of the horizontal arm of Stranahan but we think this was a mechanical expedient. The Lowe patent shows a friction facing for the same purpose as Stranahan's. The object of this invention was to prevent the rattling or vibration of the steering rod. The use of a friction facing for such a device was old, if indeed it was not an obvious mechanical expedient.

No ingenuity or invention was involved in accomplishing what Stranahan showed as an advance in this art over what was known prior to the grant of this patent. These prior art patents no less anticipated the first and second claims because they employed spring pressure as well as friction to center the tie rod. Stranahan's use of friction alone involved no more than the skill of the art, particularly in view of the use of friction alone in the Lowe patent. Lowe's device was a steering gear appliance, his tie rod extending on the front axle and forming a part of the steering gear as in Stranahan's; his bar is carried by the axle and extends into the vicinity of the tie rod as in Stranahan's and his friction member carried by the bar, engages the tie rod frictionally where the wheels are in position for straight ahead movement of the wheel as in Stranahan's.

The elements of Claim 3 involve no novelty. Lowe shows these three combined and functioning in the same way. The element—means "for releasing said rod when the wheels are turned" away from their straight ahead position,—presents no novelty. This was an old and common expedient as shown by MacDonald where he said, "the operation is facilitated by the fact that the resistance is only momentary, being active only as the device starts from centered position, the resistance then immediately discontinuing and is not active until the device is again centered." It involved no invention over the prior art to improve the means involving friction only for engaging the tie rod and preventing shimmying when the wheels are set straight ahead, and for releasing the tie rod and permitting it to be freely moved when the wheels are steered. Stranahan's use of friction alone involved no more than the expected skill of the calling in view of the use of friction alone shown for the same purpose by Lowe. Holland Furniture Co. v. Perkins Glue Co., 277 U.S. 245, 48 S.Ct. 474, 72 L.Ed. 868; Gynex Corp. v. Dilex, 2 Cir., 85 F.2d 103. The claims of this patent are invalid.

The only material element which differs the Seth patent from Stranahan's is the swiveling of the plate instead of using a rigid brake shoe as Stranahan did; Seth pivoted his brake shoe. The claims in suit, 1, 2, 3 and 6, are limited to a pivoted brake shoe construction. An analysis of each claim held valid and infringed below shows that every element thereof except the pivoting and swiveling of the brake shoe is found in Stranahan. The entire claim to patentable invention rests in a pivoted support for the brake shoe in place of a rigid support.

The appellant's device comprises a bracket adapted to be rigidly clamped to the front axle of the vehicle by means of bolts. The horizontal arm is rigidly though adjustably secured to a horizontal portion of the bracket by bolts. At the opposite end of the horizontal arm is a rigidly mounted curved brake shoe having a friction lining adapted to engage the tie rod. This brake shoe is rigidly secured by three rivets which hold the shoe in fixed position on the arm and prevent swiveling. The central rivet is larger than the two side rivets and is tightened down hard; the two smaller rivets keep the shoe from moving. The brake shoe is bowed outwardly to compensate for the wear on the brake lining during the movement of the tie rod and minimizes the strain on the rivets. Infringement was found below on the theory that riveting the brake shoe was a subterfuge, and appellee tried to prove that the side rivets were inadequate to prevent swiveling because it was possible to shear the rivets in one of appellant's devices by a series of hammer blows on the brake shoe; but it was fully established that the shocks or vibrations would not equal the hammer blows which would tend to shear the side rivets in appellant's device. Since this was a rigid construction, which would prevent swiveling, there is no infringement of any of the claims.

Both decrees are reversed.

L. HAND, Circuit Judge, concurs in part and dissents in part in separate opinion.

L. HAND, Circuit Judge (dissenting in part).

I cannot agree that Stranahan's patent is invalid, though I admit that to save it we must read the claims narrowly upon the disclosure. That is so often done that I shall not stop to cite authorities which support our power so to read them when a good invention can be saved. My reason for thinking that this is a good invention is that the disclosure came at the end of eighteen years of effort to make a simple, effective check upon "shimmying", and that, although Stranahan's has not been very widely used, it solved a very old problem. Wattles appears to have been the

first person who tried to remedy this defect in automobiles: he filed his application on August 3, 1908, and his patent issued on May 31, 1910. He disclosed a complicated device, designed to prevent "the tendency of the front wheels to turn sidewise or wobble" (lines 20, 21). Law followed Wattles in an application filed on Sept. 1, 1914, which issued in a patent on October 19, 1915, and which also was for an elaborate mechanism, to "act as a cushion in absorbing jerky movements or shocks", and so "to render the movement of the steering mechanism more stable" (lines 14–17). Lowe filed his application after Law, though his patent issued before; his was a friction check "for preventing the vibration or rattling of the steering rod * * * whereby the steering gear operates smoothly and noiselessly." Ross applied for his patent on March 17, 1916, and it issued on May 7, 1918; it was made in a number of parts, spring operated; and its object was "to produce a safety steering device for automobiles" (lines 9, 10): "normally" its elements interacted "so that the road wheels are held in their straight ahead positions" (page 2, lines 50–54), and tend to return under the pressure of a spring when thrown out. MacDonald followed Ross in an application filed on October 8, 1917, on which his patent issued on January 20, 1920. His object was to maintain "the steering mechanism of a road vehicle normally centered" (lines 11, 12): it too depended upon a spring and was awkward and cumbersome. Stoffer filed his application on May 21, 1921, and his patent issued on May 7, 1922: it was a "stablizer" made up of many interacting parts. Shoemaker was the last; he filed on September 15, 1921 and his patent issued on November 14, 1922, three and a half years before Stranahan, who filed on March 19, 1926. It also was to avoid the "lateral" vibration of the front wheels (lines 10–12), and it was perhaps the most complicated of the lot.

Thus there were six earlier efforts to meet the same defect; none of them were simple; all were apparently unsatisfactory; they were pretty evenly distributed throughout the period. In their place Stranahan substituted merely a two piece bracket, which dispensed with the springs that had been usual heretofore, was easy to adjust, and went out of action as soon as the wheels were turned to either side.

It seems to me that there could be no better evidence of invention than such a solution coming at the end of such a history. As I have said, the disclosure has not gone into very wide use; and that is true, though a million, even in the automobile industry, is not a quantity to be ignored; but I conceive that that is not an important consideration here. The defendant assures us that the need has now been superseded; but it very clearly existed for a long time, and success is of moment only as it is evidence of the right answer. Here we do not need that evidence, for obviously Stranahan did find the right answer. It is a commonplace of the patent-law that the simplicity and obviousness of a solution, instead of being the measure of its unpatentability, is just the opposite, for the highest talent is to eliminate the unessential, and to conceive the ultimate requirements in their bare outlines. For these reasons I think that the judge was right in holding the Stranahan patent valid and infringed; but I agree with my brothers that the Seth patent was not infringed.