MODERN FOOD PROCESS CO., Inc., et al. v. CHESTER PACKING & PROVISION CO., Inc.

No. 115.

District Court, E. D. Pennsylvania.

Aug. 27, 1940.

Saul, Ewing, Remick & Saul and Earl G. Harrison, all of Philadelphia, Pa., and Strauch & Hoffman, and James A. Hoffman, all of Washington, D. C., for plaintiff.

Edw. D. McLaughlin, of Chester, Pa., and Barr, Borden & Fox and Frank H. Borden, all of Philadelphia, Pa., for defendants.

KIRKPATRICK, District Judge.

This is a suit for infringement of U. S. Patent No. 1,786,372, to Vogt, for a method of preparing and packaging loaves of various food products for marketing. The specification refers broadly to meat loaf, pan baked cakes, bread, and the like, but there is nothing to show that the method is useful for anything other than scrapple.

The patent has six claims, all of which are in suit. Claims 3, 4 and 5 cover the whole process. Claims 1, 2, and 6 have to do with the single step of removing the scrapple from the mold before packaging it. Claim 2 is the narrowest of the three and is as follows: "2. The method of removing an edible product from a pan to which it tends to adhere, which consists in injecting a stream of compressed air of relatively great width and small depth between the product and a wall of said pan so that the width of the stream extends parallel to said wall to free said product from said pan, whereby substantial mutilation of said product is avoided."

This, in the light of practice, means inserting what is known as an "air-knife"— an instrument consisting of a tube for compressed air, with a flat bladed nozzle— an inch or two into the scrapple close along one side of the mold, and loosening the whole loaf by a blast of air. Claims 1 and 6 are broader and would cover almost any method by which compressed air could be used to loosen the loaf from the walls of the mold.

At the time of this patent application, scrapple manufacturers were beginning to recognize the fact that marketing scrapple in two or three pound packages was a decided improvement over the old way of sending it out in large open pans which were to be returned after the retailer had sold the scrapple by cutting out his customers' requirements. The trend in that direction got some impetus from the introduction of cellophane, which had a great sales appeal, though it is quite probable that it was not as good a wrapper to preserve scrapple as parchment paper, which had been used (not very widely) for a considerable time.

Now, certainly, there was no great difficulty about wrapping up a loaf of scrapple either in cellophane or in parchment paper. The plaintiff may have convinced the examiner that there was, but, so far as the record of the case goes, it is not apparent. The only thing approaching a problem at all was the matter of turning out the loaves without damaging their smooth surfaces formed by the contact of the scrapple with the walls of the mold. It was unquestionably desirable and very likely essential that this surface should be preserved intact. You certainly get a much better package when you can press the cellophane covering down on a perfectly smooth adherent surface, and I am quite willing to accept the plaintiff's argument that a package so made is more effective in preventing decomposition than one in which the surface of the product is rough or broken, leaving air spaces under the wrapping.

Prior to the patent, there was no use or disclosure of any method of getting scrapple out of molds by compressed air, by means of an air-knife or otherwise. However, manufacturers had been doing it, without damage to the smooth surfaces, by immersing the molds in hot water and tapping lightly, so that the loaf would drop out. Nor do I think that the common method of running an ordinary knife around the walls of the mold was as unsatisfactory, in that respect, as the plaintiff would have us believe. The real advantage which the air-knife of the plaintiff had over these methods was that; while it produced just as good a loaf as the hot water method and probably a better one than the knife method, it was very much quicker than either,

and that resulted in reduced cost of operation.

This brings us to a consideration of the prior art as against claims 1, 2 and 6. Claims 1 and 6 are clearly anticipated by the patents to Hendler (1,221,321) and to Miller (1,255,906), the latter of which was not before the examiner in the Patent Office proceeding. Both these patents are in not only closely analogous arts, but, if the broad statements of the specification be taken at their face value, the same art—turning out food products from molds. Both deal with a method of getting an adherent product (ice cream) out of a mold without spoiling its surface, and both do it by loosening the ice cream from the mold by air under pressure introduced between the product and the walls of the mold.

Claim 2, strictly limited to the introduction of air in a manner which requires a specific mechanism (the air-knife), comes somewhat closer to validity. The Hendler and Miller patents do not anticipate it because their method of introducing the air is entirely different, requiring an orifice in the mold, and because they would be inapplicable to the manufacture of scrapple loaves with its multiple light molds coming out on a conveyer. But the prior public use by the United States Rubber Company of the compressed air method of ejecting formed rubber articles from molds for the purpose of avoiding injury to their smooth surfaces, is almost exactly like the present process, and the only question is whether the two arts are sufficiently analogous that the use in the one will stand as a prior use against the other. On the whole, I believe that they are, and that the ordinarily skilled mechanic, having knowledge of the Rubber Company's use of the air-knife to free its articles from its molds, would be more than likely to see its adaptability to molded scrapple.

Claims 1 and 6 are therefore invalid as anticipated, and claim 2 is invalid for want of invention over the prior art.

Claims 3, 4 and 5, as has been said, are for the whole process of preparing the scrapple for market, beginning with putting it hot into the mold and ending with wrapping it. Each calls for a number of distinct steps. In each, the step of removing the scrapple loaf from the mold is stated in functional terms. For example, claim 5 claims "The process of preparing scrapple for the market, which comprises * * * removing the scrapple in a manner so as to avoid rupture of the coating formed by contact of the scrapple with the walls of the mold, * * *" and other steps. Thus it will be seen that this step is described only by the result accomplished. If the claim is to be sustained at all it can only be by excluding all methods of removal not described in the specification. Holland Furniture Co. v. Perkins Glue Co., 1928, 277 U.S. 245, 257, 48 S.Ct. 474, 72 L.Ed. 868; Jensen-Salsbery Laboratories v. Franklin Serum Co., 10 Cir., 1934, 74 F.2d 501, 502. In the latter case the Court said, "The claims would define the third step in the process only by the result to be obtained and not by the process for producing it. They would be for a result and not for the means of producing it, and would be functionable. A function is not patentable." Hence, this step must be limited to the compressed air method described in the specification. While this method of removal from molds was not new, it had not been used before the process for preparing and packaging for scrapple for market, and hence, claims 3, 4 and 5 would not be anticipated.

However, the main difficulty is that if the alleged "new step" must be relied on to support these claims, they are not for patentable combinations but are fundamentally mere aggregations. It need hardly be pointed out that a claim consisting of distinct elements (either parts of a machine or steps in a process) does not disclose a patentable invention unless all the elements are functionally related in some novel mode. In other words, they must co-operate in producing a new result.

The introduction of an improved element into an old combination will not save the patent unless the new element co-operates in a new or different way to accomplish the result. This is the basis of the oft-quoted rule to the effect that "A combination, to be patentable as such, must disclose a novelty of co-operation between its elements which produces a new result and amounts to invention, and the mere fact that some elements are themselves novel and possibly patentable as individual elements does not render the combination containing them patentable in the absence of such novel co-operative relation in the combination itself." In re Germantown Trust Co., Executor, Cust. & Pat. App., 57 F.2d 365, 366. And again, "And the improvement of one part of an old combination gives no right to claim that

754

improvement in combination with other old parts which perform no new function in the combination." Lincoln Co. v. Stewart-Warner Corp., 303 U.S. 545, 549, 58 S.Ct. 662, 664, 82 L.Ed. 1008. See, also, In re Reed, Cust. & Pat. App., 76 F.2d 907.

In claims 3, 4 and 5, the essence of the invention claimed lies in the sealing action of the wrapper upon the perfectly smooth outer surface formed by the slight melting and solidifying of the scrapple against the sides of the pan. The plaintiff's brief points out, "The patentee found that surfaces formed by molding scrapple in pans have a smooth, quite dense, structure. The interior of a loaf of scrapple is relatively porous. The smooth outer surface of the loaf can be easily protected, and is adequately protected by a closely adherent wrapper that encases it. * * * There is thus a definite coaction between the smooth unbroken surfaces, formed by contact of the scrapple with the walls of the mold, and the transparent wrapper that encases it and that is effective in preventing decomposition of the wrapped produce by bacterial action." This point is also emphasized in the plaintiff's file wrapper arguments.

The desired result is a smoothly wrapped, self-sealed package which resists decomposition and presents an attractive appearance. The co-operation of the elements which achieves this result is between the smooth surface of the loaf and the wrapper. The steps that go into making the surface have nothing to do with it. Provided it is smooth and firm, it will co-operate with the wrapper in exactly the same way whether the loaf has been removed from the mold by hot water immersion or by compressed air. The result is not promoted or improved if the smooth surface has been obtained in a new manner, any more than it would be if the patentee had suggested the use of cellophane produced by some new process of manufacture. All this would be equally applicable to claims 3, 4 and 5 even if the removal step in itself were patentable. As has been seen, however, it is not. Claims 3, 4 and 5 are therefore held invalid.

In order that, in the event of an appeal, the plaintiff may have the benefit of what his evidence shows upon infringement, I make the finding that all six of the claims, if valid, would be infringed by the defendant.

## Findings and Conclusions.

The statements of fact contained in the foregoing opinion may be considered special findings of fact by the Court.

The following conclusions of law are stated:

1. Claims 1 and 6 are invalid as anticipated.

2. Claim 2 is invalid for want of invention.

3. Unless the removal step of claims 3, 4 and 5 is considered as limited to the use of an air-knife, the claims are invalid as containing a purely functional description of a step of the process.

4. If construed as so limited, the claims are invalid because their only novelty consists in the introduction of a step which is merely an improvement on one part of an old combination.

5. Claims 3, 4 and 5 are invalid as aggregations, because the step of removing the scrapple from the mold by compressed air does not enter into the functional relationship of elements which is the essence of the claimed invention—namely the co-operation between the smooth surface of the wrapper to form a closely sealed package.

The complaint may be dismissed.