## S. D. WARREN CO. v. NASHUA GUMMED & COATED PAPER CO.

### No. 4707.

United States Court of Appeals
First Circuit.

July 1, 1953.

Robert S. Sanborn, Boston, Mass. (George P. Dike and Dike, Thompson & Sanborn, Boston, Mass., on brief), for appellant.

L. G. Miller, Boston, Mass. (Emery, Booth, Townsend, Miller & Weidner, Boston, Mass., on brief), for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

WOODBURY, Circuit Judge.

The plaintiff-appellant, Warren, brought suit in the court below against the defendant-appellee, Nashua, for a declaratory judgment that U. S. Patent No. 2,462,029 for "Adhesive Compositions" issued on February 15, 1949, to Lloyd M. Perry, assignor to Nashua, was invalid, or, if valid, was not infringed by two adhesive compositions made by Warren which are described in detail in the complaint. Nashua answered denying that its patent was invalid, and counterclaimed asserting infringement by Warren, wherefore it asked for both a preliminary and a permanent injunction against further infringement, an accounting for damages, and an assessment of costs. All seven claims of the Perry patent are in suit.

The District Court after trial found the Perry patent valid and infringed by Warren's compositions. It, therefore, entered the judgment from which this appeal is taken wherein it dismissed Warren's complaint and awarded Nashua on its counterclaim a permanent injunction against further infringement, its costs to be taxed, and all damages to which it was lawfully entitled as a result of Warren's infringement with leave to Nashua to apply to the court for determination of the same, or the appointment of a master for that purpose, if the amount thereof could not be agreed upon.

The patent in suit covers adhesive films and articles, such as labels, adhesive tapes, and the like having an adhesive coating. Perry says in the introductory paragraph of his specification that his "object is to provide in such film or coating a novel physical or mechanical relationship of its components whereby it will have properties, particularly those made available by change in such relation at certain imposed temperatures, which will be advantageous in practical use." In simpler language, Perry's general purpose was to provide an adhesive composition for coating as a film on the back of a paper label, or on a sealing tape, or similar article, which would not be sticky at any normal room or storage temperature, but which would become sticky when heated, and then would remain sticky for a usefully prolonged period of time after it cooled down again to a temperature substantially below the temperature required to make it adhesive in the first place. Perry does not assert that film coatings activatable to adhesiveness by heat were new in the art. His contention is that he taught for the first time that by a proper choice of ingredients it was possible to make a thermo-plastic adhesive composition which would not be sticky at any temperature normally encountered during storage or handling, but which, after activation by heating, would remain sticky at room temperature or below for a substantial period of time after activation. The two basic ingredients of Perry's composition are a potentially viscid, or sticky, material of a resinous or polymeric nature, and a plasticiser or softener for the same in the form of a non-sticky crystalline material of a type compatible to merge with the polymeric material when the two are heated together. And Perry stresses that in his invention there is no chemical reaction between these ingredients as they are mixed and spread on the paper. Instead, very finely ground particles of the two materials are intimately mechanically admixed in the film in substantially uniform proportions to form what appears to the naked eye to be a homogeneous mass.

When Perry's film is subjected to heat, the non-sticky crystalline component merges with the potentially sticky, resinous, or poly-meric component, the two being at least to some extent compatible with one another, whereby the resinous component is softened, or plasticised, and rendered sticky. Then, as the film cools, the crystalline component re-crystallizes out of the resinous component, but it does so slowly with the result that the film mass remains sticky, or viscous, for a substantial time after it has returned to room temperature. The advantage of this characteristic of the film is that a good adhesive joint, as between a paper label and a can or bottle, does not have to be made while the adhesive film on the back of the label is hot, but can be obtained for some time after the adhesive has cooled off to room temperature.

The Perry patent is by no means a simple one, and many of the terms used in it are highly technical, as the foregoing brief and general discussion indicates. We find no occasion for analysing and discussing it in greater detail, however, because that is admirably done in the opinion of the District Court. Indeed, a study of that opinion in the light of the record and the briefs and with the illumination of oral argument, leaves us with nothing of moment to add to that court's discussion and analysis, with which we quite agree. We shall therefore confine ourselves to a few general comments on so much of the appellant's arguments as seems to us worth discussion.

■ Perry's adhesive composition was new. The court below so found on abundant evidence and we agree. Also it filled a felt need. But the appellant contends that it was so clearly foreshadowed by several patents in the prior art of adhesives and the allied art of plastics, that Perry's contribution was not inventive. We do not agree.

The District Court carefully analysed the prior patents cited by Warren, and found that none of them anticipated. We have covered the same ground with the aid of the briefs and oral argument in this court and arrived at the same conclusion. There is nothing for us to add to the District Court's discussion of them. Nor do we accept the appellant's argument that the patents it cites, considered in the aggregate, point so clearly to the step Perry took that he can-

not reap an inventor's reward. Some of the patents cited seem to us to have only the remotest bearing upon Perry, if they have any bearing at all. In others there are, perhaps, hints or suggestions of Perry's result, but we see in them nothing more.

It is usually, if not indeed always, easy to discover a genesis somewhere for any patentee's contribution. A thought expressed here, a hint appearing there and a suggestion made somewhere else can always be found, after the event, and assembled to support the contention that what the patentee did was really nothing but what anyone else might do if so inclined. But if patents were to be held invalid on such reasoning few would survive. Even the greatest invention of all time, the wheel, had, we are told, its prior art of unnumbered savages slipping on round stones. How many slipped before some bruised genius among them literally fell upon the principle of the roller, and how many more years, or centuries, passed before some succeeding genius, building upon the prior art of rollers, thought of a fixed pivot and invented the wheel, can only be surmised.

■ Each case has to be considered on its own facts and in relation to its particular setting. Sometimes, it is true, the prior art as it appears in earlier patents and elsewhere points so obviously to a patentee's step that invention is clearly negatived. See McCord Corp. v. Beacon Auto Radiator Co., 1 Cir., 1952, 193 F.2d 985. This, however, is not such a case. The indications of the prior art are too obscure to warrant our conclusion, contrary to that reached by the court below, that Perry's contribution was not inventive in its nature.

The only other argument of the appellant upon which we feel inclined to comment is its contention that Perry's claims are functional, in the sense of the claims considered by the Supreme Court and held invalid for that reason in Corning v. Burden, 1853, 15 How. 252, 14 L.Ed. 683; Holland Furniture Co. v. Perkins Glue Co., 1928, 277 U.S. 245, 48 S.Ct. 474, 72 L.Ed. 868; General Electric Co. v. Wabash Appliance Corp., 1938, 304 U.S. 364, 58 S.Ct. 899, 82 L.Ed. 1402; and even more recently in Halliburton Oil Well Cementing Co. v. Walker, 1946, 329 U.S. 1, 67 S.Ct. 6, 91 L.Ed. 3.

■ The functional claims doctrine stems from the statutory requirement of long standing that an applicant for a patent must particularly point out and distinctly claim what he regards as his invention. See R.S. § 4888, 35 U.S.C. § 33, and now Title 35 U.S.C. § 112. This requirement, the courts have repeatedly held, prevents a patentee from stating his invention in terms of the result he achieves instead of in terms of his method of achievement. But it does not forbid all statements of function, result or means in patent claims. What it forbids is the description of the "crucial element" of a claim in terms of accomplishment rather than in terms of physical characteristics; it forbids a statement of function or result at the precise point of novelty. See Halliburton Oil Well Cementing Co. v. Walker, supra. The obvious purpose of the doctrine is to prevent a patentee from obtaining a monopoly over a wider area than he has pioneered.

■ Tested by these principles, Perry's claims do not seem to us "functional." Particularity of identification and clarity of statement are relative terms when applied to an invention. Some inventions are capable of description in terms of meticulous accuracy; others are not. And this is one of the latter class, for there are a great many polymeric, potentially viscid, substances of a resinous nature, and there are also many crystalline plasticisers for the same. Moreover, there is uncontradicted evidence that new substances of both kinds are constantly being developed, and furthermore the proportions of the two basic ingredients can be varied at the user's will to produce heat activation at different imposed temperatures according to need. Thus Perry was confronted with a difficult problem. If he were meticulously specific, and listed every material of both kinds which he either knew about or could discover, his patent would be of no practical value almost as soon as he applied for it. On the other hand, he had to avoid the vice of being functional. In this extremity he took the only practical course available. He described the essence of his invention in detail

and with particularity in his specification and he listed therein about forty illustrative examples of his film. Reading the claims in the light of the specification we think one skilled in the art could readily apprehend the precise nature of Perry's invention and the limits of its scope. This is all the law requires.

The question of infringement, and other questions raised by the appellant, we leave without discussion, for upon consideration we find nothing of value to add to the careful, thorough, and in our opinion accurate, analysis of those questions by the court below.

The judgment of the District Court is affirmed.