## WATER HAMMER ARRESTER CORPORATION v. TOWER.

### No. 8900.

Circuit Court of Appeals, Seventh Circuit.

July 3, 1946.

Rehearing Denied Aug. 31, 1946.

---

Elwin A. Andrus, of Milwaukee, Wis., and Harold Olson, of Chicago, Ill., for appellant.

Bertram Wm. Coltman, of Chicago, Ill., and Ralph W. Brown, of Milwaukee, Wis., for appellee.

Before SPARKS and MAJOR, Circuit Judges, and BRIGGLE, District Judge.

SPARKS, Circuit Judge.

By this complaint Water Hammer Arrester Corporation sought a declaratory judgment against the defendant relative to United States patent to Tower, No. 2,273,766, issued February 17, 1942, upon an application filed August 4, 1940. The alleged invention covered by the patent relates to a water hammer arrester, or other energy absorbing appliance of the type in which abnormal impulses or fluctuations in pressure of water or other liquid in a pipe or other conduit are suppressed by compression of a gas or other compressible fluid medium to prevent water hammer.

Plaintiff is now engaged in the manufacture and sale of water hammer arresters, and it or the Fleming Manufacturing Company have been thus engaged since midyear of 1936. During that time Cook Electric Company has been engaged in manufacturing the steel bellows used by plaintiff and the Fleming Company in their devices. On February 19, 1942, defendant, within three days after the issuance of his patent, notified plaintiff and Cook Electric Company that plaintiff's devices were infringements of his patent, and on May 10, 1942, plaintiff received from defendant a second notice of such infringement. This action followed on June 3, 1942.

The complaint further alleges that defendant was not the original and first inventor or discoverer of the subject matter of the patent, and that he secured its issuance by reason of his false oath to the effect that he was.

The relief prayed for was that defendant be temporarily and perpetually enjoined from sending notices of infringement of his patent to plaintiff's customers or prospective customers or to parties engaged in the manufacture of parts for plaintiff's use in the manufacture of its water hammer arresters, and from threatening with suit, or from suing plaintiff's customers or prospective customers charging infringement of his letters patent; that defendant be temporarily restrained pendente lite, and permanently thereafter from transferring title or any interest in and to his letters patent to others; that the court decree his letters patent No. 2,273,766 invalid and void and not infringed by plaintiff's devices, for costs against the defendant and all other proper relief.

Aside from the formal parts of the complaint, the defendant denied its material allegations. One week before the trial of the case defendant moved for a summary judgment in his favor, for the alleged reason that an actual and justiciable controversy in law did not then exist between the parties upon the facts set forth in his motion, which in substance are as follows:

"The only water hammer arresters the plaintiff has ever made, used or sold, or now makes, uses, or sells, are shown in the drawings, Plaintiff Exhibits 1 and 2 of the complaint, and shown in the drawings, Defendant Exhibit 1, adduced on adverse examination of the president of the plaintiff corporation, and these water hammer arresters have a one-sixteenth inch clearance between the bellows and the casing and not a close fit to throttle the displacement of fluid as described in the patent in suit and defined by express terms in the claims thereof.

"The defendant admits in its answer to the complaint that the water hammer arresters in Plaintiff Exhibits 1 and 2 do not infringe the patent in suit, * * *
 * * * * * *

"Wherefore, as appears from the facts shown in the record and the admissions made by the defendant thereon, the plaintiff, * * *, is absolved by the defendant from any charge of infringement of the patent in suit as to the water hammer arresters shown in Plaintiff Exhibits 1 and 2 and Defendant Exhibit 1, and therefore, an actual and justiciable controversy between the parties does not exist upon which the suit for a declaratory judgment may be maintained * * *."

The District Court overruled defendant's motion for a summary judgment. It wrote an opinion (66 F.Supp. 732), and found the facts specially at great length. It stated its conclusions of law thereon and rendered a decree adverse to the defendant, granting the relief prayed in the bill for declaratory judgment. Costs were assessed against appellant. From this decree the defendant appeals.

The theory of defendant's motion for a summary judgment is that since defendant by his motion admits that plaintiff's device does not infringe the patent, the plaintiff can no longer urge the question of validity. A study of this record discloses beyond any peradventure that the motion is based upon alleged facts which are unsupported by the evidence. For instance, defendant assumes and alleges in his motion that all of plaintiff's arresters have a 1/16 inch clearance between the bellows and the casing, and not a close fit as described in the patent and its

claims. Of course neither the patent claims nor its specifications contain any limitations upon the words "close fit." However, he insists that the clearance referred to in the manufactured device of the patent is 1/32 inch, although he and his expert witness both admitted that the patented device would work successfully with a greater clearance than 1/32 inch, and they were unable to state the precise limitation, in fact, the defendant's expert said it could not be stated except by trial and error method.

The defendant's motion avers that the only water hammer arresters that plaintiff ever made, used, or sold or now makes, uses or sells have a 1/16 inch clearance, and at first he contended that a clearance of that dimension would not work successfully. However, after witnessing the demonstrations and successful working of certain of plaintiff's devices he concluded and now insists that plaintiff's devices do not infringe the patent so long as plaintiff's clearances are not less than 1/16 inch, notwithstanding the fact that the patent claims read perfectly upon plaintiff's devices. Regardless of defendant's averment to the contrary, this record discloses that some of plaintiff's devices did have a less clearance than 1/16 inch, and greater than 1/32 inch and that they worked successfully. In support of his statement defendant relies on plaintiff's exhibit 1. It is a drawing made by the Cook Electric Company which manufactures and supplies the bellows used by plaintiff and its predecessor. This drawing was made on October 7, 1936. It illustrates the arrester made by Fleming Manufacturing Company in the same year. It shows a bellows with 51 flanges, each of a diameter of 5 7/8 inches, and incorporated in a casing having an interior chamber of a diameter of 6 1/16 inches. Each tenth flange has a skid wire carried thereby which increases the diameter of the bellows flange about 1/32 inch. This creates a restricted passage of 1/16 inch at every tenth flange between the bellows and the casing, and a restricted passage of 3/32 inch between all other flanges of the bellows and the casing.

The restricted passages of this arrester create a throttling action of the water being squeezed from between the convolutions of the bellows into the restricted passages be-

tween the casing and the outer periphery of the bellows, by reason of the frictional resistance caused by such flow of the water. Defendant was given a blue print copy of this drawing during the first week of April 1937, and its constructional operation was explained to him at that time. This exhibit discloses the water hammer arrester covered by the claims of the patent.

Exhibit 2 is also a drawing made by Cook Electric Company, on October 19, 1936. It also illustrates an arrester made by Fleming Manufacturing Company, in 1936, and a blue print of it was given defendant in the first week of April, 1937. A bellows of 76 flanges, each of a diameter of 2 12/32 inches, is incorporated in the casing having an interior chamber of a diameter of 2 15/32 inches. Every tenth flange has a skid wire carried thereby which increases the diameter of each of those flanges 1/32 inch. A restricted passage of 3/64 inch exists between all other flanges of the bellows and their casing. Its construction and operation was fully explained to the defendant when he first received it in April 1937. It responds perfectly to each of the claims in the patent.

Plaintiff introduced many exhibits such as drawings, sketches, arresters made and used by it, correspondence between defendant and plaintiff and its authorized agents, prior public use, prior publication of such uses, more than 3000 test run sheets, prior art, and reports of its agents engaged in such research. As early as July 11, 1936, Mr. Baker of Cook Electric Company, who was also engaged in plaintiff's research, made a pencil sketch, used to prepare plaintiff's Exhibit 90, which disclosed a clearance of precisely 1/32 inch. All of this information disclosed by plaintiff's exhibits and evidence was fully known by defendant when he filed his application. Under these circumstances we think defendant's concession of no infringement by plaintiff's devices where the clearance is not less than 1/16 inch does not give plaintiff the relief to which it is entitled. There was no error in overruling defendant's motion for a summary judgment. See Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826; Altvater v. Freeman, 319 U.S. 359, 63 S.Ct. 1115, 87 L.Ed.

1450; Allegheny Steel & Brass Corporation v. Elting, 7 Cir., 141 F.2d 148.

Whether an invention or discovery is valid and patentable depends upon certain conditions set forth in 35 U.S.C.A. § 31. It provides that any person may obtain a patent for anything within the category therein described, provided (1) that he has invented or discovered a new and useful thing, (2) that it was not known or used by others in this country before his invention or discovery, (3) that it is not already patented, (4) that it was not described in any printed publication in any country before applicant's invention or discovery, or more than one year prior to his application, (5) that it was not in public use or on sale in this country, without abandonment, for more than one year prior to his application.

The District Court found adversely to defendant as to each of these queries except as to usefulness and the existence of a prior patent. It is admitted that the alleged invention is useful and was never before patented. The answers to these queries constitute all the ultimate facts that are required to enable the court to pass upon the question of patentability. Out of an abundance of precaution the District Court has incorporated in its findings a great number of evidentiary facts which are not required in special findings. Indeed, they with their record citations, have been a very great help to this court, yet, they constitute a burden upon the trial court which it is not necessary for it to bear.

Our next inquiry is whether the ultimate findings are supported by substantial evidence. In order to pass upon this question we feel that it is necessary to set forth some facts leading up to the defendant's application for the patent.

In 1936, Fleming Manufacturing Company manufactured and sold water hammer arresters. An installation was made by it at Allegheny General Hospital at Pittsburg, in the late months of 1936. Installations were made elsewhere in 1937 and 1938. In 1936, Mr. Fleming, president of that company, filed an application for a patent on a water hammer arrester, which he subsequently assigned to Fleming Manufacturing Company. His attorney at that time resided in Portland, Oregon. Early in 1937,

Fleming resigned as president of that company, and the new officers, including Mr. Brielmaier, president, having learned that Fleming's application for a patent had been rejected, and having no experience in patent matters, employed the defendant as that company's patent counsel. On April 20, 1937, that company employed defendant to prepare and file an application for letters patent covering the invention, if any, in the water hammer arrester manufactured by it. The court found that there was no proof or claim that defendant knew of this type of water hammer arrester before that company employed him. Defendant was also informed by the company that it had previously engaged the services of Professor Kessler of the University of Wisconsin, who is a national authority on water hammer, for help in perfecting its water hammer arrester, and that Kessler had developed an arrester using a different type of bellows. The defendant was then furnished data and drawings of the device which the company had manufactured, and within two or three days Kessler came to Milwaukee and conferred with the defendant and showed him the report upon the units which the company had installed in the hospital in Pittsburg in 1936. Neither Kessler nor the company had had previous experience in patent matters and they relied upon the defendant for advice and counsel.

About a week later the defendant and Brielmaier went to the University at Madison, Wisconsin, where a demonstration was given to the defendant of the arresters in action on pipe lines. He was also shown the interior of an arrester illustrated by plaintiff's exhibit 90, hereinbefore referred to. At that time the defendant expressed the opinion that they "had something on which a patent would probably be allowed," and stated further that he would continue to prosecute the previously rejected Fleming application and would also prepare a new application based on the Kessler device. Months of conferences and considerable correspondence followed. Kessler sent to defendant drawings for the purpose of preparing the patent application, and the defendant, after much waiting and delay, sent claims to Kessler. From a reading of this evidence it would seem that there was no difference of opinion between the defendant and Kessler as to the novel features of the arrester which Kessler desired to have patented.

The defendant was given all information which he expressed a desire to have, but there was a constant delay on his part in preparing satisfactory claims. This is well illustrated by his letter to Kessler on November 1, 1937, in which he said: "Another matter to which thorough consideration should be given is whether an advantage is gained in *your absorber* (our italics) by having the discs in the bellows of about the same diameter as the casing so that the passage between each disc or flute and the casing is restricted." To this letter Kessler immediately replied by letter to defendant as follows: "I have always shown the bellows close to the casing and I would prefer to see them so constructed for purposes of guiding them under all possible location conditions likely to be used in practice." On March 28, 1938, in a letter to his client, the defendant said: "The bellows which have been so far employed have had the discs act as bellows by making the discs of sufficient diameter to have a close fit within the case." On May 18, defendant wrote to Kessler: "I am in receipt of your chart showing * * (3) bellows containing air and oil in the form of foam and bellows discs acting as pistons." On the next day Kessler replied saying: "* * Of course this is coupled with the dampening action due to forcing water and foam through the elongated pockets and annular orifices and the dampening effect due to the multiple piston effect."

On July 29, 1938, defendant wrote Kessler, enclosing a petition and oath and twenty-three proposed claims. The petition listed Professor Kessler, John S. Baker and the defendant as co-inventors. Several days later defendant sent Kessler a drawing to go with the application. This drawing is identical with the one on page 1, sheet 1, of the patent in suit. Kessler and Professor Rohlick, his assistant, came to Milwaukee and emphatically told defendant that he was in no way a co-inventor.

On August 21, 1938, Kessler wrote to defendant: "It is my hope that claims can be made that will cover more than the foam

idea because I truly believe the coordinating of the particular type of bellows and the casing constitutes an invention."

In the latter part of 1938 and in the early months of 1939, the officers of the Fleming Manufacturing Company and Kessler pressed the defendant to get an application for their patent filed. In January, 1939, defendant prepared an application naming Kessler and Baker as joint inventors. While this was satisfactory to Kessler, Mr. Baker refused to sign it. In the following March, defendant told Kessler and Brielmaier that there was only a 10% chance of obtaining a patent, and that the cost involved would be about $150. Kessler and Baker decided to take that chance.

As early as December 1937, Fleming Manufacturing Company was not in a financial position to spend great sums of money on patent matters and it so advised defendant. By that time defendant had rendered bills for services to the extent of $2,105, upon which the Fleming Company had paid him $400. Defendant then agreed to accept stock in a new company to be formed by Kessler, certain stockholders of the Fleming Company, and others to carry on the water hammer arrester business, which included the securing, if possible, of a patent upon the Fleming pending application, and the filing of an application for a patent upon Kessler's disclosures. For this purpose the plaintiff was organized on April 3, 1939, and became the interested party in both objects. Fleming Manufacturing Company subsequently went into liquidation, and was paid by plaintiff all money which the former had invested in the experimental and research work and all other expenses in the development of the water hammer arrester.

In early May, 1939, Kessler wrote to defendant: "More than two years have now elapsed since Mr. Brielmaier and I approached you on the subject of water hammer patent applications involving what we believe to be a new type of arrester. * * * Both Brielmaier and I feel that the patent application should be completed on the basis of the facts as you have them. They should be filed immediately. * * *" On Sep-

tember 12, 1939, defendant replied to this letter and stated: "I am now revising the application and it will be ready some time next week."

For more than ten months thereafter nothing was heard from the defendant. On July 24, 1940, defendant telephoned Brielmaier, and on the 25th he wrote to Kessler enclosing the proposed application for patent. This application contained a disclaimer clause that the "close fit" was the invention of another. On July 30, 1940, Kessler wrote to defendant stating that it had been ten months since he had heard from the defendant and in view of defendant's delay in preparing the application it no longer had any value to Kessler. It was then barred by the Statute.

Within four days from the receipt of Kessler's letter on July 30, 1940, the defendant filed his application for the patent in suit, listing himself as the sole inventor. He never notified Kessler, Brielmaier, the Fleming Manufacturing Company, or plaintiff that he had filed such an application.

On July 31, 1940, defendant mailed to plaintiff and Fleming Manufacturing Company bills for services to that date totaling $12,978.76. They were never paid for the reason that defendant had agreed to accept stock in plaintiff company for his services, in case a patent was issued. Mr. Brielmaier said: "He (defendant) never received any stock, and we never received a patent." Defendant by his answer to the complaint states that he secured the patent in his own name in order to secure payment for his services, and that he now stands ready to assign the patent to Fleming Manufacturing Company when his bill for services is paid.

Defendant's application was at first rejected on Fulton No. 1,169,250; Pepper No. 1,916,635; and Peters No. 1,959,640. The four claims of his application were finally allowed after an amendment was made to each claim. We set forth claim 4, which is typical, and have italicized the words constituting the amendment which secured the issue of the patent.[1]

---

[1] "4. A water hammer arrester, comprising in combination, a casing enclosing a cylindrical chamber and having an in- let to admit water subject to impulses in pressure, a plicated metallic bellows arranged within said casing to partition

A reading of this entire record convinces us that everything claimed in this patent was included in plaintiff's device and Kessler's drawings and disclosures, and that such information was divulged to the defendant by his clients long before the patent application was filed, and while he was acting as attorney for plaintiff. His offer to assign the patent upon payment for his services is, in effect, an admission of this.

██ There is ample evidence to support the District Court's findings that defendant was not the first inventor or discoverer of the disclosures of his patent; that his patented arrester was known and used by Kessler, Fleming Manufacturing Company, and plaintiff in this country before defendant's alleged invention; that it was described in printed publications in this country before defendant's alleged invention, and more than one year prior to his application for a patent thereon; and that it was in public use and on sale in this country without abandonment for more than a year prior to his application for a patent thereon.

██ Furthermore, if, as defendant contends, novelty exists in the patent disclosures by reason of its limitation as to the restricted passage in order to produce a throttling of the displaced liquid, then the patent is invalid because the disclosures do not teach the critical limits as required by R.S. § 4888, 35 U.S.C.A. § 33. Incandescent Lamp Patent, 159 U.S. 465, 16 S.Ct. 75, 40 L.Ed. 221; Holland Furnace Co. v. Perkins Glue Co., 277 U.S. 245, 48 S.Ct. 474, 72 L.Ed. 868.

On the date of hearing in this court, defendant filed a motion to dismiss the action on the ground that it was not prosecuted by the real party in interest. He alleged under oath that on March 14, 1944, plaintiff transferred its interest in its water hammer arrester to Wade Manufacturing Company. This was met by counter affidavits by plaintiff and Wade Manufacturing Company to the effect that there had been no such transfer and that the latter was merely acting as agent for plaintiff. There is no merit in this contention.

The decree is

Affirmed.

said chamber into an expansion compartment between said bellows and said casing to receive said water and a sealed compression compartment to contain a compressible fluid to absorb energy from said water and said bellows being composed of annular disks spaced apart from each other and joined together at the inner and outer perimeters thereof in alternation by flanges formed thereon and said disks forming annular pistons fitting close to the walls of said chamber to guide said bellows *upon deflection thereof and form constricted passages between said disks and said walls of an order to* throttle displacement of water from the external pockets between said pistons to absorb energy from said water upon deflection of said bellows by said impulses in pressure, and a compressible fluid confined within said sealed compression compartment to absorb energy from said water upon its impulses in pressure to limit the amplitude of its fluctuations in pressure."