**GAZDA v. UNITED STATES.**
No. 49554.

United States Court of Claims.

Decided Dec. 2, 1952.

Thomas L. Higginson, Old Westbury, N. Y., (Charles C. Parlin, George C. Seward, and Shearman & Sterling & Wright, New York City, on the briefs) for the plaintiff.

Bernard Wohlfert, Washington, D. C., Holmes Baldridge, Asst. Atty. Gen., for the defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

WHITAKER, Judge.

This case is before us on defendant's motion to dismiss plaintiff's petition.

Plaintiff alleges that he was an inventor of a drum type cartridge magazine designed particularly for use with the Oerlikon 20 mm. antiaircraft cannon; that he made application to the United States Patent Office for letters patent on said invention on August 15, 1939, and that pursuant thereto United States patent No. 2,367,572 was granted him on January 16, 1945; that on March 4, 1943, the Alien Property Custodian seized his rights under his application for letters patent; and that on March 9, 1949, said patent, which had been issued in the meantime, was returned to him. He further alleges that the Navy Department tested said cartridge magazine on November 15, 1940, and that thereafter it asked plaintiff for manufacturing drawings of said magazine and for drawings and specifications for the necessary tooling for the manufacture of said magazines, and that, with plaintiff's assistance, it manufactured and caused to be manufactured for its account a large quantity of said magazines; and plaintiff says that he furnished said drawings and said assistance "in reliance on the statutory obligation of the defendant to pay reasonable compensation therefor and in full expectation that he would in due course receive reasonable compensation therefor."

In his second cause of action plaintiff says that the defendant has infringed his United States patent No. 2,367,572 by manufacturing and causing to be manufactured these magazines.

In his third cause of action plaintiff, on the facts alleged in his first cause of action, alleges that the defendant is liable to him under the provisions of the Contract Settlement Act of 1944, 58 Stat. 649; 41 U.S.C.A. § 101.

Defendant's motion to dismiss is filed on the ground that plaintiff is barred by the provisions of the Trading with the Enemy Act from bringing a suit against the defendant for use of his patented invention and that the alleged cause of action based upon an implied contract is barred by the statute of limitations.

■ It would seem to be beyond controversy that defendant is not liable for an infringement of plaintiff's patent. As stated, the Alien Property Custodian issued an order on March 4, 1943, reciting that "the undersigned * * * hereby vests in the Alien Property Custodian the property hereinbefore described in sub-

paragraph 1, to be held, used, administered, liquidated, sold, or otherwise dealt with in the interest of and for the benefit of the United States." Plaintiff made application to the Alien Property Custodian for the return of his property, and the property was eventually returned. In making the application plaintiff elected to make it under the provisions of section 32 of the Trading with the Enemy Act, as amended, rather than under section 9 of the Act. Under section 9, a non-enemy owner, whose property had been seized, had the right to maintain a suit for the recovery of the property or its proceeds. But under section 32, which was added by the Act of March 8, 1946, 60 Stat. 50, as an amendment to the Trading with the Enemy Act, an owner might prosecute his claim to the property before the Alien Property Custodian without having to go into court. This amendment, as originally reported by the Committees, gave to an owner, whose patent, for instance, had been seized, a right of action against the United States for infringement of it during the time the Alien Property Custodian had possession of it; but the bill was later amended at the suggestion of the Attorney General to add a proviso prohibiting suit against the United States for infringement during the time the Alien Property Custodian held it. This proviso reads:

" * * * That except as provided in subsection (b) and (c) hereof no person to whom a return is made pursuant to this section, nor the successor in interest of such a person, shall acquire or have any claim or right of action against the United States or any department, establishment or agency thereof, or corporation owned thereby, or against any person authorized or licensed by the United States, *founded upon the retention, sale, or other disposition, or use,* during the period it was vested in the Alien Property Custodian, of the returned property, interest, or proceeds. * * *" [Italics ours.]

The order returning the property to plaintiff recites in its last paragraph:

"In consideration of the premises, I do hereby accept the property, interest, or proceeds thereof, above described, subject to the provisions of subsection (d) of section 32 of the Trading with the Enemy Act, as amended."

The above quoted proviso was a part of subsection (d) of section 32. Plaintiff, therefore, accepted the property with the understanding that he should not "acquire or have any claim or right of action against the United States * * * founded upon the retention, sale, or other disposition, or use, during the period it was vested in the Alien Property Custodian, of the returned property, interest, or proceeds."

Several affidavits filed with the motion to dismiss, which are not denied, show that the defendant did not manufacture or use any of these drum type magazines subsequent to their return to plaintiff by the Alien Property Custodian, except that, of course, the defendant continued to use those which it had acquired prior to said date.

By the agreement signed by plaintiff when the property was returned to him, plaintiff waived any right he had against the United States for infringement of his patent while it was in the possession of the Alien Property Custodian, and the affidavits above referred to show that there has been no use by the defendant after the return by the Alien Property Custodian. The continued use, after the return of the magazines acquired before the return, does not constitute an additional infringement, if any, by the United States. (Opinion on motion for rehearing, Gage v. United States, 101 F.Supp. 765, 103 F.Supp. 1022, 122 Ct.Cl. 160 certiorari denied 344 U.S. ——, 73 S.Ct. 32; Olsson v. United States, 25 F.Supp. 495, 87 Ct.Cl. 642, certiorari denied, 307 U.S. 621, 650, 59 S.Ct. 792, 83 L.Ed. 1500.

■■ If plaintiff has any right of action against the United States, it is on the theory that the United States entered into an implied contract with him to render technical assistance in connection with the manu-

facture of these magazines. Plaintiff's petition alleges that this technical assistance was given "in reliance on the statutory obligation of the defendant to pay reasonable compensation therefor and in full expectation that he would in due course receive reasonable compensation therefor." He does not allege an express promise by the defendant or its officers to compensate him, nor does he allege facts that give rise to a contract implied in fact; on the contrary, he alleges that this assistance was given "in reliance on the *statutory* obligation of the defendant to pay reasonable compensation." In other words, plaintiff says that as a matter of law the defendant was required to pay him reasonable compensation. Aside from the fact that this court has no jurisdiction of a suit on a contract implied in law, we know of no statute which obligates the defendant to pay for such services in the absence of an express contract to do so or one which is implied in fact.

Furthermore, plaintiff's Swiss patent had been filed February 12, 1940, in the Library of the Patent Office. This was a complete disclosure of it, and presumably disclosed to the United States and to others how to manufacture it. It is hardly conceivable that the United States would have agreed to pay for technical assistance which it did not need.

█ Section 33 of Title 35 U.S.C.A. requires that the applicant for a patent "shall file in the Patent Office a written description of the same, and of the manner and process of making, constructing, compounding, and using it, in such full, clear, concise, and exact terms *as to enable any person skilled in the art or science to which it appertains, or with which it is most nearly connected, to make, construct, compound, and use the same * * *."* [Italics ours.]

A failure to fully disclose the invention and the way to make it renders the patent invalid. Plant Products Co. v. Charles Phillips Chemical Co., 2 Cir., 96 F.2d 585; Water Hammer Arrester Corp. v. Tower, 7 Cir., 156 F.2d 775; Timken Detroit Axle Co. v. Cleveland Steel Products Corp., 6 Cir., 148 F.2d 267; A. F. Hamacek Marine Corp. v. United States, 26 F.Supp. 467, 88 Ct.Cl. 369; certiorari denied, 308 U.S. 619, 60 S.Ct. 291, 84 L.Ed. 517; Leibing Automotive Devices, Inc., v. Wildermuth, D.C., 23 F.Supp. 223; United States Industrial Chemicals, Inc., v. Carbide & Carbon Chemicals Corp., D.C., 67 F.Supp. 895.

The record does not disclose whether or not the Swiss law is the same as that of the United States, but presumably it is. No monopoly could possibly be granted an inventor unless the character of the invention on which a monopoly was granted had been disclosed. In the absence of disclosure, it would be impossible to know on what the inventor had a monopoly.

Since the patent application showed fully how to make this magazine, there was no need for technical assistance.

However, the defendant's chief defense to this cause of action is that it is barred by the statute of limitations.

█ Plaintiff's petition shows that he delivered several of the magazines on which he had a Swiss patent to defendant prior to November 15, 1940, and that thereafter the defendant, with plaintiff's assistance, manufactured a large quantity of them. The date these machines were manufactured and this assistance was furnished is not stated in the petition, but plaintiff in his brief, on record page 146, says:

"Plaintiff's cause of action for implied contract and for the taking of his property arose at an undetermined date shortly after the Navy firing test of November 15, 1940 (Petition, paragraph 6), and the petition herein was filed on March 24, 1950, approximately nine years and four months later."

It would thus appear that plaintiff's action is barred, but plaintiff says it was not, because his "property was vested in the Alien Property Custodian * * * on March 4, 1943, by Vesting Order 1029 * * *"; and he says that under section 32(d) of the Trading with the Enemy Act, supra, the statute of limitations was suspended during the period in which the property was vested in the Alien Property Custodian.

Under Order 1029 the Alien Property Custodian vested in himself the applicant's rights under the patent applications enumerated in this Order. Plaintiff's first cause of action, however, is based, not on any rights derived from his patent application, but from the furnishing by him of technical assistance in connection with his invention. Plaintiff's patent application, of course, did not prevent any one from using his invention, and plaintiff had no right to sue for use of it until after letters patent had been granted. Plaintiff's right of action, if any, is based upon the furnishing of this technical assistance. But, plaintiff's ability to furnish this technical assistance, or, as he expresses it, his "know-how," was not seized by the Alien Property Custodian, and could not have been. Hence, the Alien Property Custodian's Order No. 1029 did not suspend the statute of limitations on an action based upon the furnishing of this technical assistance.

Plaintiff's third cause of action is based upon the Contract Settlement Act, but this Act adds nothing to plaintiff's case. As stated above, plaintiff has not shown any acts or circumstances that give rise to a contract implied in fact, nor has he alleged any promises or acts on the part of any officer of the United States that would bring plaintiff's claim within the terms of the Contract Settlement Act. Moreover, if plaintiff has any claim under this Act, it is barred, for the reasons stated in the discussion of the alleged implied contract.

Plaintiff's claim that he has six years from the passage of this Act within which to sue is plainly without merit. The statute begins to run when the implied contract or promise or inducement was made, not when the Act was passed. The case cited by plaintiff, Hubard v. United States, 63 F.Supp. 775, 105 Ct.Cl. 395, does not hold otherwise.

It results that defendant's motion is sustained, and plaintiff's petition must be dismissed.

It is so ordered.

JONES, Chief Judge, and HOWELL, MADDEN and LITTLETON, JJ., concur.