Application of MERCIER.

Patent Appeal No. 5526.

United States Court of Customs and Patent Appeals.

March 1, 1949.

Harker H. Hittson, of Columbus, Ohio, for appellant.

W. W. Cochran, of Washington, D. C. (J. Schimmel, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Chief Judge, and HATFIELD, JACKSON, O'CONNELL and JOHNSON, Judges.

GARRETT, Chief Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office, affirming the rejection by the Primary Examiner of claims numbered 5 and 12 of appellant's application for patent, serial No. 550,260, filed August 19, 1944, entitled "Improvements in Safety Apparatus." Nine claims stand allowed. So, there is no question as to appellant having an invention, but it was the view of the tribunals of the Patent Office that the appealed claims do not clearly define matter patentable over prior art.

The claims have much the same meaning, but are couched in different phraseology. We reproduce both:

"5. A conveyor including endless chain means, a drive sprocket for said chain means, movable mechanism operative to maintain said chain means under tension, and means controlled by movement of said movable mechanism to operate a control device *whenever said movable mechanism moves rapidly in any portion of its range of movement while providing for relatively slow movement thereof in any portion of its range of movement without operating said control device.*

"12. In a conveyor, the combination with a driving shaft, of means including an endless chain driven thereby, means normally preventing an accumulation of slack in said chain throughout a predetermined range of

expansion thereof, and control mechanism associated with said second named means *constructed and arranged to function in response to any rapid change in the effective length of said chain within the predetermined expansion range thereof."*

The italics are supplied by us. The matter thus emphasized is matter which the board held to be functional.

The prior art cited consists of a single patent, 1,728,283, issued to Charles R. Fisher September 17, 1929. Another patent was originally cited but it related to a point not here in dispute and appellant did not include it in the record brought before us.

Appellant's structure, taken as a whole, is somewhat complicated. Six figures of drawings are used to illustrate it and many numerals are employed in the designation of its parts. The examiner gives an elaborate and lucid explanation of it in his statement following the appeal to the board, which we paraphrase in part and quote in part:

The conveyor named in the claims is used in elevating material to desired heights. It is made up of a series of endless chains mounted on a head sprocket and housed in a closed casing. Associated with the conveyor is an upper drive shaft connected, apparently by a belt, to a motor, and a lower foot shaft mounted in a transverse walking beam which, in turn, is mounted on a fixed part of the frame. The foot shaft is free to move upwardly in response to a predetermined excess of tension in the working run of the conveyor. It is said by the examiner: " * * * Such excess of tension may occur, for instance, when the accumulation of material at the bottom of the casing * * * is such as to prevent the ready passing through the material of the conveyor buckets as the latter traverse the lower end of the casing in their operation of engaging the material and carrying it to a point of discharge."

As the "salient features of the invention" the examiner relates, in substance, that as the walking beam, hereinbefore mentioned, pivots upwardly to a designated position a roller secured to the free end of an arm, pivoted to a fixed part of the framework, rides on the inclined surface of the walking beam, carrying upwardly a piston rod having a piston at its upper end which is movable in a designated cylinder that is movably mounted in a sleeve which is fixed to the framework. During the normal operation of the conveyor no movement of the cylinder containing the piston occurs because conditions are produced by the gradual movement of the walking beam which permit fluid to bleed out of a partially open valve at the top of the cylinder as the piston moves slowly upwardly therein. Under abnormal working conditions, however, such as the accumulation of material at the bottom of the casing, the valve at the top of the cylinder is unable to relieve the excess pressure of fluid in the upper portion of the cylinder because of the rapid upward movement of the walking beam and piston. This upward movement leads to the engagment by the upper end of the cylinder of a protruding portion of a spring element fixed to a part which is rigid with the framework. This produces a lateral movement of the spring element which causes a magnet, secured to and movable with the spring element, to close the contacts of a magnetic switch and thus energize a buzzer and relay. This opens the motor circuit and the conveyor mechanism stops in response to the energization of the relay.

An analysis of claim 5 discloses four structural elements; viz., (1) endless chain means; (2) a drive sprocket for such means; (3) movable mechanism operative to maintain the chain means under tension; and (4) means controlled by movement of the movable mechanism to operate a control device. The remainder of the claim is a functional statement which tells when structural element (4) works. There are no structural features in the functional statement.

In claim 12 the structural elements are: (1) (a) means including an endless chain driven by (b) a shaft; (2) means normally preventing an accumulation of slack in the chain throughout a predetermined range of expansion thereof; and (3) control mechanism associated with the second named

means. The remainder of that claim is functional. No structure is defined or described therein. It is simply stated that the control mechanism is constructed and arranged to function in response to a described condition.

Element (4) of claim 5 and element (3) of claim 12, in effect, were held by the tribunals of the Patent Office not to describe as to structure in the "full, clear, concise, and exact" manner required by Rev.Stat. 4888, 35 U.S.C. § 33, 35 U.S.C.A. § 33.

The reference patent to Fisher is entitled "Automatic Stop for Belt Conveyers." It relates to belt conveyor systems for loading and unloading bulk materials. The material conveyed by each conveyor is deposited upon an adjoining one, so that there is continuous advancement of the load in progressive stages. The pertinent disclosures are defined by the board substantially as follows:

The system comprises a series of similar endless belt conveyors, each of which comprises a belt for carrying material, two main pulleys—one a forward and the other a tail or take-up pulley—and a series of intermediate rollers which support the belt. The belt is driven by a motor through two drive pulleys and gearing. For taking up the slack of the belt, when the conveyor is working, the shaft of the tail pulley is slidably mounted on guideways and the pulley resiliently forced in a direction to take up the slack by a weight which is supported by a cord that extends from the slides over a shive. Some distance below the weight and in the motor circuit, a circuit breaker is located, designed to be operated by the weight upon a predetermined movement of the take-up pulley caused by slack when the belt is over loaded, or when there is a break. This stops the motor.

While the Fisher patent employs belts instead of chains, no point is made as to this on the question of patentability.

It was held by the tribunals of the Patent Office that every structural limitation of both the appealed claims reads upon the Fisher patent, and impliedly approved the statement of the examiner that the two claims "define over the reference only in statements of function or result."

The Fisher patent made no disclosure of the subject matter held to be functional, and it is contended on behalf of appellant, in effect, that by using, as in claim 5, the clause "means controlled by movement of said movable mechanism," followed by the functional phraseology, and, as in claim 12, the phrase "control mechanism," also followed by functional phraseology, he has really defined structural limitations which distinguish from Fisher.

The authority principally relied upon by appellant appears to be the decision of the Supreme Court of the United States in the case of Continental Paper Bag Company v. Eastern Paper Bag Company (often referred to as the Paper Bag Patent case), 210 U.S. 405, 28 S.Ct. 748, 52 L. Ed. 1122. We hereinafter take further notice of this case.

The examiner cited the case of Halliburton Oil Well Cementing Co. v. Walker et al., 329 U.S. 1, 67 S.Ct. 6, 91 L.Ed. 3, and In re Ferguson, 83 F.2d 693, 23 C.C. P.A., Patents, 1143. The board held: "It appears to us the claims differ from the Fisher disclosure only in functional statements employed to define the most crucial element (the element which stops the motor upon rapid change in the effective length of the chain within a given range) in the combination. In other words, at the exact point of novelty convenient functional language is used to define appellant's conveyor combination over that disclosed by Fisher. We find that the claims are sufficiently broad to include all means, controlled by the movement of the chain tension mechanism, capable of stopping the motor when there is a rapid change in the effective length of the chain and permit the running of the motor when there is only a slow movement in the effective length of the chain. See In re Spitzglass and Handwerk, 96 F.2d 1002, 25 C.C.P.A., Patents, 1227, 37 U.S.P.Q. 791, 496 O.G. 856; 1938 C.D. 641.

To the cases cited by the examiner and the board the solicitor adds others, including In re Lawson et al., 83 F.2d 1001, 23 C.C.P.A., Patents, 1235; In re Smellie,

111 F.2d 651, 27 C.C.P.A., Patents, 1176; and In re Horton et al., 151 F.2d 210, 33 C.C.P.A., Patents, 704.

It is insisted on behalf of appellant that the appealed claims are not as broad as those which were disapproved by this court in the Ferguson and Spitzglass et al. cases, supra. The other references to decisions of this court cited in the brief of the Solicitor for the Patent Office are not discussed in the brief for appellant which, of course, was filed before that of the Solicitor for the Patent Office. We are of opinion that all those cases are apropos, but deem it unnecessary to here review any of our own decisions, except that in the case of In re Horton et al., supra.

In that case we held, in substance, as to two of the appealed claims that although they contained functional statements they also contained structural limitations sufficient to present patentable distinctions over the references, and reversed the decision of the board which had affirmed the examiner's rejection of them on functional grounds. We did not hold anywhere in that decision that a functional statement containing no structural limitation might render a claim patentable. There are epitomized in a headnote of that case statements appearing in claims there involved which we held to be functional and which we here reproduce for purposes of comparison:

"2. Claims—Functional

"Statements that locking means is 'held inoperative by and during motor operation,' and that it is 'operable by and from the window to resist sliding' etc. are functional as are statements that lock is 'operable by and during window opening movement of the unit to lock the unit,' and that it is 'rendered inoperative by and during movement of the unit' etc., statements that lock is 'independent of the manual control' and that it is 'for locking the window with increasingly greater securement in accordance with an increase in the effort applied' and statement that lock is 'wholly independent of the control means and operable by a prying effort.' "

Passing from our own decisions to that of the Supreme Court of the United States,

we do not think that appellant has succeeded in demonstrating the inapplicability here of that Court's decision in the Halliburton case, supra, although there has been presented in his behalf what would be a well reasoned brief if its premises could be accepted as correct, but, unfortunately for appellant, we cannot so accept them.

Assuming, but not holding, that, as is asserted in the brief for appellant, "great confusion as to the status of the patent law is injected by [the Supreme Court's decision in] this [the Halliburton] case," it is not a function of this court to reverse the decision. Rather we must follow it, until that Court itself reverses or modifies it.

The patent, the validity of which was involved in that case, is described, in substance, in the Court's opinion, as relating to an alleged improvement upon an apparatus designed to facilitate the pumping of oil out of wells which do not have sufficient natural pressure to force the oil to gush. Specifically the alleged improvement appears to have been devised for use in connection with measuring the depth of the well by what the Court describes as the "sound-echo-time method."

The claim set out as typical in that case read [329 U.S. 1, 67 S.Ct. 10]: "In an apparatus for determining the location of an obstruction in a well having therein a string of assembling tubing sections interconnected with each other by coupling collars, means communicating with said well for creating a pressure impulse in said well, echo receiving means including a pressure responsive device exposed to said well for receiving pressure impulses from the well and for measuring the lapse of time between the creation of the impulse and the arrival at said receiving means of the echo from said obstruction, and *means associated with said pressure responsive device for tuning said receiving means to the frequency of echoes from the tubing collars of said tubing sections to clearly distinguish the echoes from said couplings from each other.*" (Italics supplied.)

The Court's comment follows: "A claim typical of all of those held valid only

describes the resonator and its relation with the rest of the apparatus as 'means associated with said pressure responsive device for tuning said receiving means to the frequency of echoes from the tubing collars of said tubing sections to clearly distinguish the echoes of said couplings from each other.' The language of the claim thus describes this most crucial element in the 'new' combination in terms of what it will do rather than in terms of its own physical characteristics or its arrangement in the new combination apparatus. We have held that a claim with such a description of a product is invalid as a violation of Rev.Stat. § 4888 [35 U. S.C.A. § 33]. Holland Furniture Co. v. Perkins Glue Co., 277 U.S. 245, 256, 257, 48 S.Ct. 474, 478, 479, 72 L.Ed. 868; General Electric Co. v. Wabash Appliance Corporation, supra [304 U.S. 364, 58 S. Ct. 899, 82 L.Ed. 1402]."

We are unable to distinguish in principle between the statement in the claim there held by the Supreme Court to be merely functional and the statements in the respective claims here involved held by the tribunals of the Patent Office to be merely functional.

Appellant points out that the Supreme Court did not, in deciding the Halliburton case, supra, overrule its prior decision in the Paper Bag Patent case, supra, and insists that there is such a similarity between the limitations in the claims here involved and the limitation in the typical claim quoted by the Supreme Court in the Paper Bag Patent case, supra, that the decision in the Paper Bag Patent case, supra, should be held controlling here. To this we are unable to agree, and it may be said that the Supreme Court expressly distinguished the cases. It was contended during the argument of the Halliburton case, supra, that the decision of the Paper Bag Patent case, supra, was applicable, but the Court held that it was not, saying: "In that [Paper Bag Patent] case, however, the claims structurally described the physical and operating relationship of all the crucial parts of the novel combination."

An examination of the claim quoted in the Paper Bag Patent case, supra, discloses

that it embraced a functional statement but it also embraced structural limitations, in which respect it was similar to the claims allowed by us in the case of In re Horton et al., supra. The claims here involved, in our opinion, do not meet that condition.

Therefore, the decision of the Board of Appeals of the Patent Office is affirmed.

Affirmed.